## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## <u>BALTIMORE DIVISION</u>

**AQUA ACCEPTANCE, LLC**

401 East Pratt Street,
Suite 2424,
Baltimore Maryland 21202. (Baltimore City)

      **PLAINTIFF**                     **CIVIL NO.:**

      **v.**

**THE PELICAN GROUP
CONSULTING, INC.**
**a Delaware corporation**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198.

**THE PELICAN GROUP MISSION
ADVANCEMENT SERVICES, LLC.**
**a Delaware LLC**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**O'MEARA, FERGUSON ASSET
MANAGEMENT, LLC**
**A Delaware LLC**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**THE PELICAN GROUP
SECURITIES, LLC.**
**a Delaware LLC**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**THE PELICAN GROUP CAPITAL
ADVISORS, LLC.
a Delaware LLC**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**O'MEARA, FERGUSON, WHELAN,
AND CONWAY SCHOOL ONE
SERVICES, LLC. a Delaware LLC**
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**OFK GP, LLC
a Delaware LLC**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**PELICAN REALTY, LIMITED
PARTNERSHIP
a Delaware LP**.
c/o Frank Ferguson
Southern Holdings, LLC,
2227 Penny Lane
The Plains, Virginia 20198

**THE UNIVERSITY OF MARY
a North Dakota Corporation**
7500 University Blvd.
Bismarck, North Dakota 58504-9634

**FRANK FERGUSON**
2227 Penny Lane
The Plains, Virginia 20198

**PATRICK O'MEARA**
44247 Highland Court
Northville, MI 48168-8447

**and**

2

**JOHN WHELAN**
625 Ivanhoe Lane
Holmes Beach FL 34217

**DEFENDANTS**

---

### PLAINTIFF'S COMPLAINT FOR MONEY JUDGMENT, FRAUD AND FRAUDULENT CONVEYANCE AND REQUEST FOR JURY TRIAL

---

Plaintiff, Aqua Acceptance, LLC, files this complaint, for Money Judgment, Fraud and Fraudulent Conveyance against the the above captioned defendants and in support thereof states as follows:

## THE PARTIES

1.     The Plaintiff, Aqua Acceptance, LLC ("Plaintiff" or "Aqua"), is a Delaware LLC with its principal place of business located at 401 East Pratt Street, Suite 2424, Baltimore Maryland 21202

2.     Defendant, The Pelican Group Consulting, Inc. f/k/a O'Meara Ferguson, Whelan and Conway, Inc. a/k/a O'Meara Capital Partner's Inc., t/a the Pelican Group t/a OFK Development, t/a Mission Advancement Services; t/a the Pelican Group Mission Advancement Services; t/a O'Meara, Ferguson, Whelan and Conway Mission Advancement Services; t/a OFK Development and Stewardship, Services; t/a O'Meara, Ferguson, Whelan & Conway Securities; t/a Pelican Group, Securities; t/a O'Meara, Ferguson, Whelan, and Conway Capital Advisors t/a Pelican Group Capital Advisors, t/a O'Meara Ferguson Asset Management, t/a, O'Meara, Ferguson, Whelan, and Conway School One Services, LLC t/a Pelican Realty,

3

Limited Partnership t/a OFK GP, is a Delaware Corporation with its principal place in Virginia c/o Frank Ferguson, Southern Holdings, LLC, 2227 Penny Lane, the Plains Virginia 20198.

3.      Defendant, The Pelican Group Mission Advancement Services, LLC, f/k/a/ O'Meara, Ferguson, Whelan and Conway Mission Advancement Services, LLC f/k/a OFK Development and Stewardship, Services, LLC. a/k/a OFK DSS (hereinafter referred to as ("OFK Development") is a Delaware LLC with its principal place of business located in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, The Plains, Virginia 20198.

4.      Defendant, The Pelican Group, Securities, LLC f/k/a O'Meara, Ferguson, Whelan & Conway Securities LLC ("Pelican Securities") is a Delaware, LLC with its principal place of business located in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, The Plains, Virginia 20198.

5.      Defendant, The Pelican Group Capital Advisors, LLC  f/k/a O'Meara, Ferguson, Whelan, and Conway Capital Advisors, ("Pelican Advisors") is a Delaware, LLC with its principal place of business located in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, The Plains, Virginia 20198.

6.      O'Meara, Ferguson, Whelan, and Conway School One Services, LLC.; ("OFW School One") is a Delaware LLC with its principal place of business located

4

in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, The Plains Virginia 20198.

7.      OFK GP, LLC, a Delaware registered LLC ("OFK GP") with its principal place of business located in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, The Plains, Virginia 20198.

8.      O'Meara, Ferguson Asset Management, LLC is a Delaware registered LLC ("OFAM") with its principal place of business located in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, The Plains, Virginia 20198.

9.      Pelican Realty, Limited Partnership ("Pelican Realty") is a Delaware organized limited partnership with its principal place of business located in Virginia c/o Frank Ferguson, Southern Holdings, LLC 2227 Penny Lane, the Plains Virginia 20198.

10.     OFK Development, Pelican Advisors, Pelican Securities, OFW School One, OFK GP, OFAM and Pelican Realty are wholly owned subsidiaries of the Pelican Group and the alter egos of the Pelican Group.("hereinafter referred to collectively as the "Alter Ego Defendants."

11.     Defendant, Frank Ferguson, is an individual who is a citizen of of the State of Virginia whose principal residence is located at 2227 Penny Lane, the Plains

Virginia 20198. This defendant, at all times relevant herein, was the president and board member of and held a substantial financial interest in, the Pelican Group, and the Alter Ego Defendants. As set forth below, this defendant personally committed, inspired, directed, participated or cooperated in the Pelican Group committing the fraud against the Plaintiff.

12.     Defendant, Patrick O'Meara, is a citizen of the state of Michigan with a principal address of 44247 Highland Court. Northville, MI 48168-8447. This defendant, at all times relevant herein, was an officer and or board member of, and held a substantial financial interest in, the Pelican Group, and the Alter Ego Defendants. As set forth below, this defendant personally committed, inspired, directed, participated or cooperated in the Pelican Group committing the fraud against the Plaintiff. This defendant was also the top investment officer of the defendant, University of Mary, from 2014 to 2017.

13.     Defendant, John Whelan, is a citizen of the state of Florida with an address of 625 Ivanhoe Lane Holmes Beach FL 34217. This defendant, at all times relevant herein, was an officer and board member holding a substantial financial

6

interest in, the Pelican Group, and the Alter Ego Defendants.  As set forth below, this defendant personally committed, inspired, directed, participated or cooperated in the Pelican Group committing the fraud against the Plaintiff.

14.     Defendant, University of Mary, is a North Dakota nonprofit corporation with its principal place of business located at 7500 University Blvd. Bismarck, North Dakota. 58504-9634. As set forth, below the University of Mary was a co-conspirator and aider and abettor of the fraud against the Plaintiff.

## JURISDICTION AND VENUE

15.     This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because: (1) the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs; and (2) the matter in controversy is between citizens of different states.

16.     The basis for jurisdiction arises out of a Loan and Security Agreement dated January 2016 between the Plaintiff and the Pelican Group and Frank Ferguson (EXHIBIT 1) (the "Loan Agreement") and  the two promissory notes related to the Loan Agreement identified as follows:(1) a promissory note dated January 2016 in the amount of $700,000.00 made payable to Plaintiff and executed by the Pelican

Group (EXHIBIT 2); and (2) a second note dated June 17, 2016 in the amount of $100,000.00 made payable to Plaintiff and executed by the Pelican Group (EXHIBIT 3).

17.      Pursuant to the terms of the Loan Agreement [Exhibit 1] at page 15 ¶ 14(a), The Pelican Group and Frank Ferguson consented to jurisdiction and venue in the United States District Court for the District of Maryland

18.      Jurisdiction and Venue are proper as to the Alter Ego Defendants because the Alter Ego Defendants are the alter egos of the Pelican Group in connection with the perpetration of the fraud set forth in this Complaint.

19.      Jurisdiction against Messrs. Whelan, O'Meara and Ferguson are proper because (1) each of these defendants are officers of and hold a substantial financial interest in the Pelican Group and the Alter Ego Defendants and (2) each of these defendants personally committed, inspired, directed, participated and/ or cooperated in the Pelican Group committing the fraud against the Plaintiff.

20.      Jurisdiction and Venue is proper against the University of Mary because the University of Mary was a co-conspirator and an aider and abettor with the Pelican Group in committing the fraud.

## THE VIRGINIA PROPERTY

21.     In 2004, Mr. Ferguson acquired an interest in Wildwood Farms, LLC a Virginia Limited Liability Corporation and n/k/a Five Fields, LLC ("Five Fields") for the sum of $1,279,815.00.

22.     To fund the purchase, Five Fields obtained a loan from Middleburg Bank in the amount of 1.2 Million Dollars.

23.     Five Fields was purchased during the 2002-20006 housing boom and consisted of approximately 103 acres of undeveloped farmland ("Five Fields Property") located in Leesburg [Loudoun County] Virginia, a burgeoning suburb of Washington, D.C. Five Fields intended to create a large housing development on the property.

24.     Messrs. O'Meara and Whelan teamed with Mr. Ferguson to develop the Five Fields Property.

25.     In connection with their development of the Five Fields Property in 2006, Messrs. O'Meara, Ferguson, and Whelan created OFK GP. Messrs. O'Meara, Ferguson and Whelan were officers of the OFK GP.

26.     On July 3, 2006, Messrs. O'Meara, Ferguson, Whelan and Kearns, formed Pelican Realty.

27.     OFK GP is a General Partner of the limited Partnership known as Pelican Realty Limited Partnership.

28.     The sole member of OFK GP is the Pelican Group, formerly known as O'Meara, Ferguson & Kearns, Inc.

29.     The Pelican Group's former principal offices were located in Leesburg, and Ashburn Virginia, near the Five Fields Property location.

30.     On March 14, 2007, Five Fields, obtained a loan in the amount of 2.26 Million Dollars from Middleburg Bank ("2007 Bank Loan"). A copy of the 2017 change of terms agreement referencing the 2007 Bank Loan history is attached hereto as as EXHIBIT 4. The 2007 Bank Loan repaid an existing loan that Five Fields had with Middleburg Bank in the amount of 1.2 million dollars and issued a line of credit for a total sum of 2.26 million dollars.

31.     In 2007 Messrs. O'Meara and Ferguson and Whelan formed OFK Development. Mr. Whelan was the manager and CEO for OFK Development.

32.     Mr. Whelan was the manager and CEO for OFK Development.

33.     On June 12, 2008, payments on the 2007 Bank Loan almost doubled because payments increased from interest only to principal and interest payments.

34.     From June 12, 2008 to June 12, 2011, Payments of principal and interest alone on the Middleburg Bank Loan, averaged and approximated $240,000.00 per year.

35.     In 2008, Messrs. O'Meara, Ferguson, Whelan, Conway and Kearns changed OFK Development's name from OFK Development and Stewardship, Services, LLC to O'Meara Ferguson Whelan and Conway Mission Advancement Services, LLC.

## OFK DEVELOPMENT BORROWS MORE MONEY TO DEBT SERVICE AND DEVELOP THE VIRGINIA PROPERTY

36.     Concealing OFK as a development company, On October 20, 2008, OFK Development [using the name O'Meara Ferguson, Whelan and Conway Mission Advancement Services, LLC] obtained a million-dollar loan ("CD Loan 1")

from the Catholic Diocese of Austin ("Catholic Diocese"). A copy of CD Loan 1 Promissory Note is attached hereto as EXHIBIT 5.

37.     Payments on this loan were interest only amounting to $100,000.00 per year until 2011. Payments for CD Loan 1 and the 2007 Bank Loan amounted to approximately $340,000.00 per year.

38.     Based on information and belief, OFK Development diverted a substantial portion of the loan proceeds towards debts service and trying to convert the zoning, design the development of the Five Fields Property.

39.     The Pelican Group, individually and/or through its wholly owned subsidiaries obtained an undisclosed interest in the Five Fields Property through Pelican Realty, and other related entities which were reflected in the Pelican Group's tax returns.

40.     On October 7, 2009, thirteen days before receiving the first 1,000,000.00 Catholic Diocese Loan, Messrs. O'Meara and Ferguson formed

OFAM, an asset management limited liability Company.  OFAM was located near the Five Fields Property.

41.     As the mortgage crisis continued, Five Fields continued to bleed money towards debt servicing and developing the Five Fields Property. To keep the Five Fields Property Development alive,  OFK Development obtained a second million-dollar loan from the Catholic Diocese ("CD Loan 2"). A copy of the CD Loan 2 Promissory Note is attached hereto as EXHIBIT 6. CD Loan 1 and CD Loan 2 were guaranteed by Messrs. O'Meara, Ferguson, and Landeck.

42.     The payments on this loan amounted to $100,000.00 in interest per year until May 5, 2012.

43.     As of April 2009, the debt service on the CD Loans 1 and 2 and the 2007 Bank Loan totaled approximately $440,000.00 per year for the years 2009 to 2011.

44.     Based on the above, more than two million dollars was paid by the Pelican Group and/or the Alter Ego Defendants towards the debt service on the Five Fields Bank loan.

45.     As a consequence, and as shown on the Pelican Group Tax Returns, the Pelican Group received or held an interest in the following:

i.      a 50% interest in in Pelican Realty;

ii.     an 89% interest in OFAM.

46.     Based the Pelican Group's tax returns and the facts set forth above, the Pelican Group held a concealed majority interest in Five Fields, LLC and the Five Fields Property.

47.     Mr. Ferguson promoted secret interests in the Five Fields Property to avoid defaulting with Middleburg Bank on the 2007 Bank Loan.

48.     Aqua did not discover the relationship between the Pelican Group, Pelican Realty, OFK Development and OFAM to the Five Fields Property until May of 2020.

49.     Due to the 2008 mortgage crisis, Five Fields was delayed by several years in re-zoning and developing the Five Fields Property. Consequently, Five Fields was forced to wait out the crisis and continue to use funds from the Pelican Group to fund the 2007 Five Fields Bank Loan and to pay the fees and costs of rezoning the Five Fields Property.

## THE PELICAN GROUP AND
## THE ALTER EGO DEFENDANTS MIRED IN DEBT

50.     In 2012, the Pelican Group acquired valuable data metric software related to students and schools from FIT Technologies, LLC and formed wholly owned subsidiary OFW School One.

51.     In consideration for the purchase of the data metric software, FIT Technologies received shares of the Pelican Group.

52.     By 2014, the Pelican Group, OFK Development, and OFW School One were mired in litigation and debt.

a. *350 South Main LLC v. O'Meara, Ferguson, Whelan & Conway, Inc.*, [Pelican Group] Case No. 14-178-CK, State of Michigan in the Business Court of Washtenaw County, 22nd Judicial Circuit, February 27, 2014.

b. *Yaffe & Company v. O'Meara, Ferguson, Whelan & Conway, Inc*, [Pelican Group] Case No. 14-71 -CK, State of Michigan in the Business Court of Washtenaw County, 22nd Judicial Circuit, January 24, 2014.

c. *Frank S. Ladner By and Through Julia M. Ladner, His Attorney in Fact v. O'Meara, Ferguson, Whelan, and Conway, Inc.*, [Pelican Group] Case No. 13-L-8, Circuit Court of the Second Judicial Circuit of Lawrence County, Illinois, November 13, 2013.

d. *Julia M. Ladner, Successor Trustee of the Frank S. Ladner Revocable Trust dated February 7, 2006 v. O'Meara, Ferguson, Whelan, and Conway, SchoolOne Services, LLC*, [OFW School One]. Case No. 13-L-6, Circuit Court of the Second Judicial Circuit of Lawrence County, Illinois, August 22, 2013.

e. *Paul Votaw et al. v. O'Meara, Ferguson, Whelan and Conway Mission Advancement Services, LLC*, [OFK Development] et al, Case No. GD-13-017839, Court of Common Pleas Allegheny County, Pennsylvania, September 25, 2013.

f. *Catholic Diocese of Austin v. O'Meara Fergus, Whelan and Conway Mission Advancement Services, LLC, [OFK Development] John Whelan, Frank Ferguson, and Patrick O'Meara,* Defendants, United States District Court for the Southern District of Texas, Houston Division. Civil Action No.: 4:13-CV-216.

g. *Exago, Inc. v. O'Meara Ferguson Whelan and Conway SchoolOne Services, LLC* Superior Court of Ct. Milford CV-14-6016074-S.

h. In addition, there were tax liens and unpaid federal and state payroll and state income taxes in the various states for the Pelican Group and its subsidiaries and/or affiliates. (hereinafter referred to as "the Pelican Obligations").

53. Unbeknownst to Plaintiff at the time the AQUA Promissory Notes were executed in 2016, in 2013, the Catholic Diocese of Austin ("Catholic Diocese") sued OFK Development [O'Meara Ferguson, Whelan and Conway Mission Advancement Services, LLC] and its related guarantors, Messrs. Ferguson, O'Meara

and Whelan for 1.725 million dollars. in the United States District Court for the Southern District of Texas.  In February 2014, OFK Development and the guarantors entered into a settlement agreement with the Catholic Diocese. The terms of the settlement were not disclosed.

## THE UNIVERSITY OF MARY HIRES THE PELICAN GROUP AND ALTER EGO DEFENDANTS

54.    The Pelican Group and the Alter Ego Defendants were desperate for money. Mr. O'Meara used his connections as an alumnus of University of Mary, to bail out the Pelican Group and himself with several creditors.

55.    With full knowledge that the Pelican Group and its officers were mired in debt. In May or June of 2014, the University of Mary hired Patrick O'Meara as the University of Mary's Chief Investment Officer and Executive Director of the Harold Schafer Leadership Center ("Center").

56.    With full knowledge that the Pelican Group and its officers were mired in debt, in May or June of 2014, the University of Mary hired the Pelican Group to run its fundraising campaign.

57.    In May or June of 2014, the University of Mary, hired Pelican Securities to provide financial investment services to University of Mary.

58.    The University of Mary provided the Pelican Group with a $300,000.00 advance on June 5, 2015 to pay of its creditors.

59.     The University of Mary hired the Pelican Group and O'Meara with full knowledge that the Pelican Group and its officers were mired in debt.

60.     The University of Mary acquired significant influence over the Pelican Group by naming three individuals of its choice to Pelican's board of directors.

61.     Under the contract executed with the Pelican Group, the University of Mary was provided with options which included but were not limited to:

(1) a purchase option which permitted University of Mary to purchase the tangible and intangible assets [other than cash and investments] of the Pelican Group, and it's related companies for seven (7) million dollars including but not limited to the Pelican Group's proprietary fundraising system, technical and informational data and customer and donor list information. These companies included the Pelican Group, Pelican Mission Advancement; OFK Development; OFW SchoolOne, O'Meara Ferguson, Whelan, and Conway Capital Advisors "Pelican Advisors" ; OFAM, and OFK GP.  Notably, the investments of OFAM and OFK GP were excluded from purchase, *i.e.* the Five Fields Property.

(2) a phase II and III buyout option which permitted the University of Mary to buyout phase II and III of the fund-raising campaign prior to 2018 by circumventing any payments to the Pelican Group. Instead, University of Mary would be required to pay (1) $1,415,000.00 to the Pelican Group Shareholders; (2) $1,186,667.00 to Mr. Ferguson and Sharon Mainero n/k/a Sharon Kucia and (3) $593,333.00 to Patrick O'Meara; and

18

(3) an alternative Phase II and III where the University of Mary would continue with the Pelican Group and pay $4,952,500.00 for Phase II $4,450,000.00 for Phase III.

## FIVE FIELDS CONTINUING TO SUFFER SETBACKS.

62.   During this time, Five Fields was continuing to suffer setbacks in developing the Five Fields Property.  Five Fields was having difficulty in changing the property's zoning use from agricultural to residential.

63.   Furthermore, the Pelican Group Entities were running out of money to provide services to the University of Mary to get through Phase I of its campaign.

## MESSRS. O'MEARA, FERGUSON
## AND WHELAN DEFRAUD AQUA

64.   Requiring additional funds, Messrs. O'Meara, Ferguson, and Whelan did what they do best – set out to defraud, wealthy catholic individuals and groups using the cloak of Christianity. For example, Mr. O'Meara in an article dated August 14, 2014 [discovered by Plaintiff in March 2020] misrepresented to the editor of the article that the Pelican Group's deal with the University of Mary as follows:

> O'Meara, who just moved to North Dakota from Michigan, said "not much money would be involved in any deal [between University of Mary and the Pelican Group]."
>
> "We're talking about building the kingdom of God, serving the mission, and making a reasonable living," O'Meara said.
>
> https://www.insidehighered.com/news/2014/08/04/north-dakota-university-looks-partner-and-maybe-buy-profit-consulting-firm

The University of Mary's deal with the Pelican Group potentially exceeded 15 million dollars or more going to the Pelican Group.

65.     Mr. Whelan, as the chief operating officer, chairman of the board and a major shareholder for the Pelican Group and the Alter Ego Defendants knew how to manipulate the books to make the Pelican Group look profitable.

66.     Mr. Ferguson, as the president, board member and a major shareholder of the Pelican Group and the Alter Ego Defendants was the front man with the full knowledge of the books and records of the Pelican Group and the Alter Ego Defendants. Mr. Ferguson has a convincing personality touched with a southern charm and an aura of being devout catholic.

67.     Mr. O'Meara, as the board member and major shareholder of the Pelican Group and the Alter Ego Defendants has the financial back-ground in asset and investment management. Mr. O'Meara controlled the operations of the Pelican Group even while employed by the University of Mary. This fact is evidenced by (1) Mr. O'Meara's discussions with the reporter in August 2014 as the spokesperson for the Pelican Group while he was employed with the University of Mary; (2) his role as president of the Pelican Group for several years (3) his then current  board of directors' position with the Pelican Group; and (4) Mr. O'Meara's name being first on all of the named organizations.

68.     Mr. O'Meara had the convincing personality who was able to convince the University of Mary to not only employ him in handling most of its financial affairs and investments but to hire the Pelican Group despite the University of Mary knowing that that Pelican Group was mired in debt.

69.     University of Mary was desperate to keep the Pelican Group alive after investing close to two to three million dollars in 2014 and 2015. With two years to go, the Pelican Group failed to come close to its projected goals. As of June 3, 2016, the University of Mary had only reached 40% of its 112 million-dollar goal.

70.     The Pelican Group's performance was so poor that it had to revamp the campaign, reduce the goal amount, extend it a year and restart it a year and a half later in October 2015.

71.     In revamping the campaign, the University of Mary reduced the payments to the Pelican Group by $710,461.52 over the next 1.5 years beginning in 2016.

72.     Once again, the Pelican Group was in dire need of funds to keep up its philanthropy obligations with the University of Mary.

73.     Messrs. Ferguson, Whelan, and O'Meara were desperate to keep the Pelican Group alive, so that they could continue to keep the Five Fields Property investment alive.

74.     During 2016, Five Fields was continuing to have problems in changing the zoning of the Five Fields Property. It was also having problems with making payments on the on the Five Fields Bank Loan.  The Pelican Group did not have the cash flow to make the payments as well.

75.     Messrs. O'Meara, Whelan, and Ferguson were aware that the Five Fields Property could turn into a thirty- million dollar or more property if they could rezone it from agricultural to residential or commercial.

76.     Mr. O'Meara, in his capacity as an officer of University of Mary and as a financial shareholder and de-facto officer in the Pelican Group and the Alter Ego Defendants, along with Mr. Ferguson and Mr. Whelan, devised a plan to defraud private lenders in order to keep the Pelican Entities alive until they could cash in on the Five Farms Property and complete Phase I of the University of Mary Campaign.

77.     In 2015, Mr. Ferguson was introduced to a Mr. Vern Landeck who is a principal with Capital Life Cycle, LLC ("Capital"). Capital is an organization that assists borrowers in finding private loans.

78.     When the two met, Mr. Ferguson represented to Mr. Landeck that the Pelican Group's grand mission was to raise funds for catholic based universities, schools and churches and that it was his mission to to save them through his work in the Pelican Group.

79.     Mr. Ferguson then introduced Mr. Landeck to Mr. O'Meara. Mr. Landeck was impressed with these individuals and their philanthropic mission Mr. Landeck then sought out private investors to extend a loan to the Pelican Group.

80.     In 2015, Mr. Landeck introduced Mr. Ferguson to Mr. Galtelli. Mr. Galtelli was a practicing catholic. Mr. Ferguson impressed Mr. Galtelli with his godly mission to keep Catholic based institutions financially secure through the Pelican Group's faith-based philanthropic strategies.

81.     Mr. Ferguson's intent was not to save catholic institutions through philanthropy; his desire was to purchase a large plantation down in Virginia; exploiting catholic philanthropists and institutions was the way to obtain it.

82.     Mr. Whelan and Mr. O'Meara were waiting on the big pay-off from the Five Fields development and needed to keep the Pelican Group alive to do it as well as recoup any personal investment they had in the Pelican Group.

83.     Trusting Mr. Ferguson as a devout catholic, Mr. Galtelli sought out Aqua to lend $1,000,000.00 to the Pelican Group. Mr. Galtelli invested his own funds and convinced others to invest their funds in Aqua enabling Aqua to lend money to the Pelican Group.

84.     In order to induce Aqua into lending money to the Pelican Group, Messrs. O'Meara, Whelan and Ferguson had to make approximately $10 million dollars in debt disappear from the Pelican Group's books.

85.     Messrs. O'Meara, Whelan and Ferguson caused to be falsified the Pelican Group's 2014 financials showing a reduction in the Pelican Group's liabilities from $14,911,360 to $5,957,012. (the "2014 False Financial Information").  A copy of the balance sheet from these 2014 Financials is attached here as EXHIBIT 7.

86.     Messrs. O'Meara, Whelan and Ferguson caused to be falsified the Pelican Group's 2015 financials through the second quarter (the "2015 False Financial Information."). The 2015 False Financial Information reflects a reduction of an additional $1,148,061 in debt from the beginning of 2015 to the end of September 2015. A copy of the 2015 second quarter balance sheet from these 2015 Financials is attached hereto as EXHIBIT 8.

87.     The total reduction in liability from the beginning of 2014 to the third quarter of 2015 was approximately $9,950,475.00. The 2014 False Financial Information and 2015 False Financial information described above is collectively referred to as the "2014-2015 False Financial Information."

88.     In applying for the loan from Aqua, Mr. Ferguson, Mr. Whelan and Mr. O'Meara caused to be sent to Mr. Landeck through an email dated October 5, 2015 from Mr. Ferguson, the 2014 False Financial Information.

89.     In applying for the loan, Messrs. Ferguson, Whelan O'Meara caused to be sent to Mr. Landeck through an email dated October 7, 2015 from a Mr. David Ives, the 2015 False Financial Information.

90.     Messrs. Ferguson, Whelan O'Meara knew that this information was false and that the Plaintiff would rely it.

91.     On December 7, 2015, a Pelican Group Board Meeting was held, where Mr. Ferguson and Mr. Whelan were present. Also believed to be present at this meeting was Mr. O'Meara who was also a board member at the time.   At this meeting, Mr. Ferguson and Mr. Whelan and other board members discussed what liabilities were staying on the Pelican books in connection with obtaining the loan from Aqua. Based upon this information there were discussions in using the 2014-2015 False Information to obtain the loan.

92.     In addition, Mr. Whelan and Mr. Ferguson discussed with the board the additional borrowing status of the Pelican Group and the on-going work for the University of Mary. In October 2015, Based on this information and the downsizing of the donation campaign in October 2015,  This discussion involved the Pelican Group receiving a 700,000.00 reduction in the payments from the University of Mary. After these discussions, Mr. Ferguson and Mr. Whelan and the rest of the Pelican Group Board, voted and directed that the Pelican Group proceed with obtaining the loan from Aqua. Based on Mr. O'Meara's status as a Pelican Group

Board member, it is believed that Mr. O'Meara was present at the meeting but was concealed from the board minutes.

93.     In applying for the loan, Mr. Ferguson, Mr. Whelan and Mr. O'Meara caused to be sent to the Plaintiff, the February 18, 2015 Letter Agreement showing that the Pelican Group was receiving $121,556.56 per month from the University of Mary until June 2017. A copy of this Letter is attached hereto as EXHIBIT 9. This Letter is referenced in the Aqua Notes. (EXHIBITS 2 and 3). This letter did not disclose that the University of Mary payments to the Pelican Group were being reduced by $710,461.52.

94.     The University of Mary, by and through its officers, Mr. O'Meara and Greg Vetter, the Executive Vice President of the University of Mary intentionally waited until after Aqua loaned the $700,000.00 to Pelican before reducing to writing the University of Mary's payment obligations.

95.     Mr. Vetter was fully aware that AQUA was relying on the February 18, 2015 Letter to fund its loan evidenced by a December 29, 2015, letter signed by Mr. Vetter providing University of Mary's consent to the Pelican Group engage in the loan from Aqua. A copy of this letter is attached hereto as Exhibit 10.

96.     Based on the restructuring of the campaign in October 2015 and the Pelican Group Board Meeting minutes, the similarities between the $700,000.00 Aqua Loan and the reduction in payments,  the University of Mary and the Pelican

Group agreed to reduce compensation to the Pelican Group by approximately $700,000.00 prior to The Pelican Group executing the Aqua Loan Documents in 2016.

97.    The terms of this reduced compensation were post-dated to February 19, 2016 and is attached hereto as EXHIBIT 11. The following shows the $710,461.52 reduction in payments from the 2015 Letter Agreement and the February 2016 Letter Agreement.

| | |
|---|---:|
| **February 2015 Agreement** | |
| **Number of Payments Remaining as of 2/1/2016** | **17** |
| **Amount of Payment** | **121,556.56** |
| **Total 2015 Agreement** | **2,066,461.52** |
| | |
| **February 2016 Revised Agreement** | |
| **Number of payments – February to June 2015** | **5** |
| **Amount of Payment (1)** | **115,000.00** |
| **Subtotal (1)** | **575,000.00** |
| | |
| **Number of payments July 2016 to May 2017** | **11** |
| **Amount of Payment (2)** | **71,000.00** |
| **Subtotal (2)** | **781,000.00** |
| | |
| **Total 2016 Agreement** | **1,356,000.00** |
| | |
| **Difference: 2016 –2015** | **<710,461.52>** |

98.    At the time, Messrs. O'Meara, Ferguson and Whelan, in their capacity as officers and directors of the Pelican Group, caused the February 2009 Letter Agreement to be submitted to Aqua, these defendants and the University of Mary

were aware that they had reduced their compensation package by approximately $710,461.52

99.    The Pelican Group's 2014-2015 False Financial Information deceptively reflected that the Pelican Group was thriving and reducing its liability at a great pace.

100.   2013-2016 Pelican Group Tax Returns and its 2014-2016 financial statements represented that the Pelican Group combined all of its Alter Ego Defendants, assets, and liabilities with the Pelican Group as a single entity.

101.   In January 2016, Ms. Hollender, the president and CEO of Aqua, relied on the Pelican Group's false representations contained in the 2014-2015 False Financial Information and the 2015 Letter Agreement referred to in Note 1 lent the Pelican Group the sum of $700,000.00 (EXHIBIT 2).

102.   In June of 2016, Ms. Hollender, the CEO and President of Aqua relied on the 2014-2015 False Financial Information and granted the Pelican Group a second loan in the Amount of $100,000.00 (EXHIBIT 3).

103.   Unbeknownst to Aqua at the time they loaned the money to the Pelican Group, Messrs. Whelan, Ferguson and O'Meara had not paid down the Pelican Group's debt obligations as represented in 2014-2015 False Financial Information.

104.   Rather, than pay down the debt, Messrs. Whelan, O'Meara, and Ferguson caused almost ten million dollars of the Pelican Group's debt to shift to a

hidden account called OFK DSS inter-company debts and removed it from the consolidated financials and tax returns for the years 2014, 2015, 2016 and 2017. (the "Secret-OFK DSS Account").

105. Messrs. O'Meara, Ferguson and Whelan concealed the OFK DSS Account from Aqua for close to three years. This account concealed $11,172,796.80 in Pelican Group obligations. A copy of this 2018 Balance Sheet showing the Secret OFK DSS Account is attached hereto as EXHIBIT 12. Aqua did not discover the Secret OFK DSS Account until May or June of 2020.

106. Based upon the December 7, 2015, Pelican Board's discussion about which accounts were going to remain on the Pelican Books, this discussion involved the Secret DSS Account and how to conceal it. A copy of the Board Minutes is attached hereto as EXHIBIT 13.

107. During 2016, Five Fields continued to have problems in changing the zoning of the Five Fields Property. It was also having problems with making payments on the on the Five Fields Bank Loan. The Pelican Group did not have the cash flow to make payments on the Bank Loan as well.

108. Needing cash desperately, and not wanting to disclose to Plaintiff that the Pelican Group held an interest in the Five Fields Property, Mr. Ferguson sought out individual parties related to AQUA to assist Five Fields in making the monthly payments on the Five Fields Bank Loan.

109.   Mr. Ferguson advised Mr. Galtelli, Mr. Landeck and Ms. Hollender, that if AQUA wanted to make sure that AQUA got paid on the Pelican Loan, they needed to lend money to Mr. Ferguson and Five Fields enabling Five Fields to make the monthly payments on the loan.

110.   Mr. Ferguson obtained four loans totaling approximately $70,000.00.

111.   Mr. Ferguson assured these individuals that in the event, Pelican did not pay Aqua, he would make sure that the AQUA would be repaid through the sale of the Five Fields Property.

112.   Mr. Galtelli, Mr. Landeck and Ms. Hollender individually loaned Mr. Ferguson a collective total of $75,000.00 to keep the Five Fields property development alive, relying on Mr. Ferguson's statements that Mr. Ferguson would pay off the Aqua Notes and other loans as well as his personal loans when Five Fields Property was sold and the Pelican Group was unable to pay.

113.   Mr. Ferguson also represented to Mr. Galtelli, that the Pelican Group would pay off the loans when it received the money from University of Mary when it exercised its option to purchase the Pelican Assets.

114.   In June of 2017, Mr. Galtelli inquired with Mr. Ferguson as to whether University of Mary had exercised its option to purchase the Pelican Group assets from the Pelican Group, Mr. Ferguson lied to Mr. Galtelli that Pelican did not exercised the option.

30

115.   At the time Mr. Ferguson made the statement he knew that Mr. Galtelli would communicate this information to Layla Hollender at Aqua. Ms. Hollender relied on Mr. Ferguson's lie.

116.   Unbeknownst to Aqua at the time, University of Mary had already exercised the option and purchased the Pelican Group and the Alter Ego Defendants assets and hired two of its key employees to run a new organization called the "Institute for Catholic Philanthropy."

117.   Aqua justifiably relied on Mr. Ferguson's false statement that the University of Mary did not exercise the option and did not discover it until April 2020.

118.   Mr. O'Meara, in his capacity as an officer of University of Mary, and Messrs. Ferguson and Whelan orchestrated the Pelican Group's purchase of assets from the Pelican Group and the Alter Ego Defendants in 2017, in exchange for the University of Mary paying Messrs. O'Meara, Mr. Ferguson, Whelan and the other Pelican Groups shareholders, a sum exceeding three million dollars.

119.   Neither the Pelican Group nor the Alter Ego Defendants received any consideration for the assets transferred to the University of Mary.

120.   Relying on Mr. Ferguson's statement to Mr. Galtelli that University of Mary did not exercise the option, Aqua continued to rely on Mr. Ferguson's statements that Aqua would be repaid when the Five Fields Property was sold.

121.   In March of 2018, the Five Fields Property sold to a third-party Compass Datacenters IAD I LLC and the Five Fields Property is now worth 30 million dollars.

122.   Mr. Ferguson refused to pay Aqua the balance owed on the loan. Mr. Ferguson concealed from Aqua that the Pelican Group held a substantial interest in the Five Fields Property.

123.   Rather than pay Aqua from the Pelican Group's interest in the Five Field Properties, Mr. Ferguson kept these proceeds and purchased a 333 Acre southern plantation in The Plains, Virginia through his limited liability company, Southern Holdings, LLC.  Mr. Ferguson paid the the sum of 7.9 million dollars for the plantation

124.   Mr. Ferguson created Southern Holding LLC on March 3, 2018. On or about March 20, 2018, Five Fields sold Five Fields Property.  On August 17, 2018 Southern holding purchased the 333 Acre Plantation are shown below.









125. Based upon Messrs. Whelan and O'Meara's involvement with OFK GP, Pelican Realty and the Pelican Group, these defendants also received substantial proceeds from the Five fields property belonging to the Pelican Group.

## COUNT I – Money Judgment Promissory Notes.

126. Plaintiff Incorporates the prior paragraphs into Count I of this Complaint.

127. As of September 15, 2020, the remaining amount due on Note I is as follows:

| | |
|---|---|
| Principal Amount: | 606,055.58 |
| Accrued Interest to September 15, 2020 | 354,643.52 |
| Total Principal and Interest | $960,699.10 |

Plus, Attorney's Fees and Costs and Interest accruing at the rate of $303.03 per day

A copy of the Statement of Account for Note 1 is attached hereto as EXHIBIT 14.

128. As of September 15, 2020, the remaining amount due on Note II is as follows.

| | |
|---|---|
| Principal Amount: | 79,286.71 |
| Accrued Interest to September 15, 2020 | 46,395.94 |
| Total Principal and Interest | $125,682.65 |

Plus, Attorney's Fees and Costs and Interest accruing at the rate of $39.64 per day

A copy of the Statement of Account for Note 2 is attached hereto as EXHIBIT 15.

129.   The Combined amounts owed under Note I and Note II are as follows:

Principal Amount:                                        685,342.29

Accrued Interest to September 15, 2020                  401,039.46

Total Principal and Interest                           $1,086,381.75

Plus, attorney's fees and costs and interest accruing at the rate of $342.67 dollars per day.

130.   Note I and Note II allow for attorney's fees and court costs in the event of default.

131.   Despite demand, the Pelican Group refused to pay the amounts due on the Notes.

**WHEREFORE**, Aqua requests Judgment in favor of Aqua and against the Pelican Group for the the following sums and for other just and proper relief:

Principal Amount:                                        685,342.29

Accrued Interest to September 15, 2020                  401,039.46

Total Principal and Interest                           $1,086,381.75

Plus, attorney's fees and costs and interest accruing at the rate of $342.67 dollars per day.

## COUNT II– FRAUD – CIVIL CONSPIRACY – AIDING AND ABETTING.

132.   Aqua incorporates the prior paragraphs into Count II of this Complaint.

133.   Messrs. Ferguson Whelan and O'Meara in their capacity as officers, directors and/or shareholders of the Pelican Group made and/or ratified the material misrepresentations to the Plaintiff by causing the 2014-2015 False Financial Statements to be prepared and delivered to the Plaintiff and the post dated February 2015 Letter Agreement to be  delivered to Plaintiff (the "Misrepresentations.").

134.   Messrs. Ferguson Whelan and O'Meara in their capacity as officers, directors and/or shareholders of the Pelican Group, made the material misrepresentations to Plaintiff with the intent that Plaintiff would rely on it in granting the AQUA loan to the Pelican Group.

135.   Messrs. Ferguson Whelan and O'Meara in their capacity as officers, directors and/or shareholders of the Pelican Group knew the falsity of the material misrepresentations and made the misrepresentations with reckless indifference as to the truth thereof.

136.   Messrs. Ferguson Whelan and O'Meara in their capacity as officers, directors and/or shareholders of the Pelican Group made and/or caused to be made or ratified the misrepresentations with the intent to defraud the Plaintiff.

137.   The Plaintiff justifiably relied on the misrepresentations and loaned the Pelican Group $800,000.00 identified in Note I and Note II.

138.   Had Plaintiff known that the Pelican Group had an additional ten to eleven million dollars in debt, and/or coupled with the fact that the University of

Mary had reduced the payments to the Pelican Group by $710,461.52, Plaintiff would not have loaned $800,000.00 to the Pelican Group.

139.   The motive for Messrs. Whelan, O'Meara and Ferguson and the Pelican Group was for purposes of greed and and profit. All wanted the Five Fields to pay off; particularly Mr. Ferguson wanted to buy a Virginia plantation.

140.   Messrs. Ferguson Whelan and O'Meara were longtime controlling officers, board members and shareholders in the Pelican Group and the Alter Ego Defendants. Each of these defendants held significant financial interests in the Pelican Group and the Alter Ego Defendants. They also managed and controlled the operations of these corporation. In these capacities, Messrs. Whelan, O'Meara and Ferguson, personally committed, inspired, directed, participated, and/or cooperated with the fraud committed by the Pelican Group against the Plaintiff.

141.   Messrs. Ferguson, Whelan and O'Meara had full knowledge of the Fraud and approved loan after having board member discussions regarding the 2014-2015 Fraud Financials and the pending $700,000.00 reduction in payments not disclosed to Aqua.

142.   The motive and involvement for the University of Mary is as follows:

a.  The University needed to keep the Pelican Group in operation until the completion of the Phase I campaign. Based on information and belief. The University of Mary had paid Pelican close to $3 million dollars from 2014 to the end of 2015.

b.  After more than two years of effort, the Pelican group achieved less than half of their $112,000.00 goal in donations for the University of Mary after almost two years of effort.

c.  The University of Mary was still committed to pay Pelican approximately two million dollars $2,066,461.52 from February 1, 2016 to June 2017 as set forth in that Compensation Agreement Letter dated February 15, 2015 between the Pelican Group and the University of Mary.

d.  The University of Mary desired to reduce its payment to the Pelican Group by approximately $700,000.00 an amount equal to Aqua Note 1.

e.  Based on the restructuring of the campaign in October 2015 and the Board Meeting minutes, the University of Mary and the Pelican Group agreed to reduce compensation to the Pelican Group by approximately $700,000.00 prior to The Pelican Group executing the Aqua Loan Documents in 2016.

f.   University of Mary, by and through its Executive Vice President Greg Vetter and its top financial officer, Mr. O'Meara, knew that Aqua was relying on the February 2015 Compensation Letter in providing a $800,000.00 loan to the Pelican Group.

g.  Based in information and belief, the University of Mary by and through its Executive Vice President, Greg Vetter and its top financial officer, Mr. O'Meara, were concerned that Aqua may refuse the loan or reduce the amount to the Pelican Group if the

39

Pelican Group disclosed the $700,00.00 payment reduction prior to the Notes being executed.

h. the University of Mary had full knowledge of the fraud through its officer Mr. O'Meara and Executive Vice President Greg Vetter.

i. The University of Mary, by and through its officer, Mr. O'Meara, had full knowledge that the Pelican Group was presenting False Financial Documents to Aqua to obtain a $1,000,000.00 loan.

j. The University of Mary, by and through its officer, Mr. O'Meara, had full knowledge that the Pelican Group was concealing approximately 10 million dollars in Pelican Group debts for purposes of defrauding Aqua into lending them money.

k. The University of Mary by and through its officers, Mr. O'Meara and its Executive Vice President, Greg Vetter, intentionally waited until after Aqua loaned the $700,000.00 to Pelican before reducing to writing the University of Mary's payment obligations to the Pelican Group. Based on the above allegations, the revised Agreement was reached prior Aqua loaning the money to the Pelican Group.

143.    As set forth above, the University of Mary and the Pelican Group, by agreement and/or understanding entered a conspiracy for the purposes of defrauding Aqua for the direct or indirect benefit of University of Mary. The University of Mary engaged in overt acts in post-dating a $710,461.51 income reduction compensation agreement with the Pelican Group with full knowledge of the 2014-2015 financial

information presented to the Plaintiff was a sham and that the Plaintiff was relying on 2015 Compensation Agreement in funding the Aqua Loans.

144.   As set forth above, the University of Mary aided and abetted in the fraud by providing substantial encouragement and/or assistance to Pelican in furtherance of the Pelican Group's fraud.

145.   As a result, Aqua was injured in the following amounts:

| | |
|---|---|
| Principal Amount: | 685,342.29 |
| Accrued Interest to September 15, 2020 | 401,039.46 |
| Total Principal and Interest | $1,086,381.75 |

Plus, attorney's fees and costs and interest accruing at the rate of $342.67 dollars per day.

**WHEREFORE**, Aqua requests Judgment in favor of Aqua and against the Defendants, The University of Mary, the Pelican Group, Frank Ferguson, Patrick O'Meara, and John Whelan for the the following sums in compensatory damages:

| | |
|---|---|
| Principal Amount: | 685,342.29 |
| Accrued Interest to September 15, 2020 | 401,039.46 |
| Total Principal and Interest | $1,086,381.75 |

Plus, attorney's fees and costs and interest accruing at the rate of $342.67 dollars per day.

Punitive Damages in the amount of $1,000,000.00 and for other just and proper relief.

## COUNT III

## <u>THE ALTER EGO DEFENDANTS</u>

146.   Aqua Incorporates the prior paragraphs into Count III of this Complaint.

147.   The Pelican Group had "complete domination over the Alter Ego Defendants' finances, business policies and business practices in respect to the fraud so that the Alter Ego Defendants had at the time no separate mind, will, or existence of its own.

148.   This allegation is supported by the 2013-2016 Pelican Group Tax Return and financial statements which combined all of the Alter Ego Defendants, assets, and debts into the Pelican Group except for approximately ten million dollars in debt concealed from Plaintiff in the Secret OFK Account. Such control is also reflected in the May 2014 Agreement between University of Mary and the Pelican Group, where the Pelican Group had complete control over the sale of the Alter Ego Defendant's assets.

149.   The Pelican group used this domination and control over the Alter Ego Defendants to commit the above fraud [dishonest and unjust acts] against the Plaintiff in contravention of Plaintiff's rights.

150.    The Alter Ego Defendants and Pelican were insolvent at the time of the fraud and used secret accounts to conceal approximately 10 million dollars in debt. The Alter Ego Defendants did not file any recent tax returns. The Alter Ego defendants did not observe any bylaws or other corporate structure. The Pelican Group's purpose combining assets and liabilities of the Alter Ego defendants with its own was for purposes to confuse and defraud creditors like the Plaintiff.

151.    The fraud committed by the Pelican Group through the Alter Ego Defendants was proximate cause of the Plaintiff's injuries.

**WHEREFORE**, Aqua requests Judgment in favor of Aqua and against the Alter Ego Defendants, for the following sums in compensatory damages:

Principal Amount:                                              685,342.29

Accrued Interest to September 15, 2020                401,039.46

Total Principal and Interest                            $1,086,381.75

Plus, attorney's fees and costs and interest accruing at the rate of $342.67 dollars per day.

plus, Punitive Damages in the amount of $1,000,000.00 and for other just and proper relief.

## COUNT IV FRAUDULENT TRANSFER
## <u>Messrs. Ferguson, O'Meara, and Whelan</u>

152.   Aqua Incorporates the prior paragraphs into Count IV of this Complaint.

153.   At the time of the conveyances set forth in this paragraph, Aqua is a creditor of the Pelican Group and the Alter Ego Defendants.

154.   On or about March 18, 2018, the Five Fields property sold to a third party. The property is now worth 30 million dollars.

155.   The Pelican Group held at least a 50% interest in the Five Fields Property. When it sold, Mr. Ferguson, received at least 5.5 million dollars of which a percentage belonged to the Pelican Group.

156.   Based upon information and belief, Messrs. O'Meara and Whelan also received monies from the Five Farm sale which consisted of a percentage belonging to the Pelican Group.

157.   Messrs. O'Meara, Ferguson, and Whelan caused caused the Pelican Group to convey to them the Five Farm sale proceeds belonging to Pelican ("Pelican Property").

158.   Based upon information and belief, the value of the Pelican Group Property conveyed to Messrs. O'Meara, Ferguson, and Whelan exceeds the amount of the total judgment amount requested in this complaint.

159.   At the time the Pelican Property was conveyed to Messrs. O'Meara, Ferguson, and Whelan the Pelican Group and/or the Alter Ego Defendants were insolvent.

160.   The Pelican Group and/or the Alter Ego Defendants did not receive fair consideration for the Pelican Property.

161.   Messrs. O'Meara, Ferguson, and Whelan acted in bad faith in receiving the Pelican Property.

162.   At the time Messrs. O'Meara, Ferguson, and Whelan received the Pelican Property, they and the Pelican Group acted with the intent to hinder delay or defraud creditors.

163.   Pursuant to MD Code Comm. Law Article 15-201 et. seq. is entitled to judgment against Messrs. O'Meara, Ferguson, and Whelan in an amount equal to the value of the Pelican Property Received or the Judgment amount whichever is greater.

**WHEREFORE**, Aqua requests Judgment in favor of Aqua and against the defendants, Ferguson, O'Meara, and Whelan for a sum equal to the largest judgment rendered  by this court against the Defendant, the Pelican Group, in this Complaint or the value of the fraudulent conveyance in this count whichever is less and for other just and proper relief.

## COUNT V - FRAUDULENT TRANSFER
## <u>UNIVERSITY OF MARY, O'MEARA, FERGUSON, and WHELAN</u>

164.   Aqua Incorporates the prior paragraphs into Count V of this Complaint.

165.   The University of Mary, through its officers, Mr. O'Meara, Mr. Vetter and others had full knowledge of the Pelican Group's insolvency and that its payments were being paid directly to individuals rather than directly to the Pelican Group or the Alter Ego Defendants.

166.   Relying on Mr. Ferguson's false statement that the University of Mary did not exercise the option to purchase the Pelican Group's assets, the Plaintiff did not discover until March 2020, that the University of Mary had exercised the option in 2017 and paid money directly to officers and shareholders of the Pelican Group in excess of 1.5 million dollars rather than pay it directly to the Pelican Group

167.   In exchange, the Pelican Group and its wholly owned alter ego defendants conveyed, the Pelican Group's proprietary fundraising system, technical and informational data and customer and donor list information and other trade secrets of value ("the Pelican Personal Property").

168.   At the time of the conveyance, the Pelican Group and the Alter Ego defendants were insolvent.

169.   The Pelican Group did not receive fair consideration in exchange for the Pelican Personal Property.

170.   University of Mary acted in bad faith in receiving the conveyance with full knowledge that Pelican Group had taken part in defrauding the Plaintiff and was now involved in depriving Plaintiff of the Pelican Group's remaining assets.

171.   Messrs. Ferguson, Whelan and O'Meara, each received Pelican funds from the University of Mary ("Pelican Personal Property Proceeds") without fair consideration.

172.   At the time Mr. Ferguson received these Pelican Personal Property Proceeds, the Pelican Group and the Pelican Group Entities were insolvent.

173.   Mr. O'Meara, and Mr. Whelan received Pelican Personal Property Proceeds from the University of Mary, without fair consideration and in excess of what is owed to Aqua.

174.   At the time Messrs. O'Meara Ferguson and Whelan received these conveyances the Pelican Group and the Alter Ego Defendants were insolvent.

175.   At the time University of Mary received the Pelican Personal Property, the University of Mary and the Pelican Group acted with the intent to hinder delay or defraud creditors.

176.   At the time Messrs. Ferguson, Whelan and O'Meara, received the Pelican Personal Property Proceeds, they and the Pelican Group acted with the intent to hinder delay or defraud the Plaintiff.

177.   Pursuant to MD Code Comm. Law Article 15-201 et. seq. Plaintiff is entitled to judgment against University of Mary and Messrs. O'Meara, Ferguson, and Whelan in an amount equal to the value of the Pelican Property Received or the Judgment amount whichever is greater.

**WHEREFORE**, Plaintiff requests Judgment in favor of Plaintiff and against the University of Mary, and Messrs. O'Meara, Ferguson, and Whelan for a  sum equal to the largest judgment rendered by this court against the Defendant, the Pelican Group, in this Complaint or the value of the fraudulent conveyance in this count whichever is less and for other just and proper relief.


Respectfully, submitted.

/s/Troy Swanson
Troy C. Swanson
#05806
TCS Legal LLC
213 Finney Ave.
Churchville, MD 21028
410-927-1991 T
410-927-1992 F
Email: tswanson@com-lit-legal.com
Attorney for Plaintiff

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial in the above captioned matter.

/s/Troy Swanson
Troy C. Swanson
#05806
TCS Legal LLC
213 Finney Ave.
Churchville, MD 21028
410-927-1991 T
410-927-1992 F
Email: tswanson@com-lit-legal.com
Attorney for Plaintiff