## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**AQUA ACCEPTANCE, LLC,**

    *Plaintiff,*

    v.

**THE PELICAN GROUP
CONSULTING, INC.,** *et al.,*

    *Defendants.*

    \*

    \*

    \*

    \*

    \*

**Case No. 1:20-cv-02802-JRR**

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## <u>MEMORANDUM OPINION</u>

    This matter comes before the court on Defendants The Pelican Group Consulting, Inc. ("the Pelican Group"), The Pelican Group Capital Advisors, LLC, The Pelican Group, Securities, LLC, The Pelican Group, Mission Advancement Services, LLC (collectively, the "Subsidiary Defendants"), Frank Ferguson, and John Whelan's (collectively the "Pelican Group Defendants") Renewed Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 61; the "Pelican Group Motion") and Defendant the University of Mary's Renewed Motion to Dismiss Plaintiff's Amended Complaint.  (ECF No. 62; the "University of Mary Motion").[1]

    The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, by accompanying order, the Pelican Group Motion will be denied as to Counts One and Two and granted as to Counts Three through Six;[2] the University of Mary Motion will be granted.  Accordingly, this case shall proceed only as to

---

[1] *See* Page 6 of this Memorandum Opinion.

[2] Plaintiff has requested this court dismiss Counts V and VI, both for Fraudulent Transfer. (ECF No. 65, p.13; ECF No. 66, p.3.)

Plaintiff's claims for breach of contract against the Pelican Group and Mr. Ferguson (Counts One and Two).

## BACKGROUND[3]

Plaintiff Aqua Acceptance, LLC is a Delaware LLC with its principal place of business in Maryland.  (ECF No. 16, ¶ 1).  The Pelican Group is a Delaware Corporation with its principal place of business in Virginia.  *Id.*  ¶ 2.  The Subsidiary Defendants are all Delaware LLCs with principal places of business in Virginia.  *Id.*  ¶¶ 3-5.  Mr. Ferguson is a resident of Virginia and at all times relevant to the Complaint was the president and board member of the Pelican Group and the Subsidiary Defendants.  *Id.* ¶ 11.  Mr.  Whelan is a resident of Florida and at all times relevant to the Complaint served as an officer and board member of the Pelican Group and the Subsidiary Defendants.  *Id.* ¶13.  University of Mary is a North Dakota non-profit corporation with its principal place of business in North Dakota.  *Id.*  ¶14.

On December 9, 2020, Plaintiff filed its First Amended Complaint (ECF No. 16; "Complaint") against Defendants[4] alleging breach of contract and fraud claims arising out of a Loan and Security Agreement dated January 2016 (the "Loan Agreement") and two accompanying promissory notes dated January 2016[5] and June 17, 2016.  The Complaint originally contained six counts: (1) Money Judgment against the Pelican Group; (2) Breach of Contract/Breach of Representation and Warranties against the Pelican Group and Mr. Ferguson; (3) Fraud/Civil Conspiracy/Aiding and Abetting against the Pelican Group Defendants and University of Mary; (4) The Alter Ego Defendants; (5) Fraudulent Transfer against Messrs. Ferguson, O'Meara, and

---

[3] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the First Amended Complaint (hereinafter the "Complaint").

[4] The following defendants have been voluntarily dismissed from the case without prejudice: OFK GP, LLC; Pelican Realty Limited Partnership; O'Meara Ferguson, Whelan and Conway SchoolOne Services, LLC; and Patrick O'Meara. (ECF Nos. 35, 39.)

[5] The Promissory Note dated January 2016 (ECF No. 16-3), does not identify its date of execution.

Whelan; and (6) Fraudulent Transfer against University of Mary, O'Meara, Ferguson, and Whelan. (ECF No. 16.)

The Pelican Group Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) arguing that the court lacks personal jurisdiction over Mr. Ferguson and Mr. Whelan; and that Plaintiff fails to state a claim upon which relief can be granted. (ECF No. 61-1, p.2.)  Similarly, the University of Mary moves to dismiss the case for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6).  (ECF No. 62-1, p.3, 5.)

Given Plaintiff's request that the court dismiss Counts Five and Six (ECF No. 65, p.13; ECF No. 66, p.3), the court will address only Counts One through Four.

## LEGAL STANDARDS

### *Federal Rule of Civil Procedure 12(b)(2)*

"When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), 'the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.'" *CoStar Realty Info., Inc. v. Meissner,* 604 F. Supp. 2d 757, 763 (D. Md. 2009) (quoting *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003)) (citations omitted). "If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *CoStar Realty Info., Inc.,* 604 F. Supp. 2d at 763 (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, 'the plaintiff need only make *prima facie* showing of personal jurisdiction.'" *CoStar Realty Info., Inc.,* 604 F. Supp. 2d at 764 (quoting *Carefirst*, 334

3

F.3d at 396) (citations omitted). "In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction the court 'must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.'" *CoStar Realty Info., Inc.,* 604 F. Supp. 2d at 764 (citing *Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56, 60 (4th Cir. 1993)) (citations omitted).

### *Federal Rule of Civil Procedure 12(b)(6)*

A motion asserted under Rule 12(b)(6) "tests the legal sufficiency of a complaint." It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is "…not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards,* 178 F.3d at 244 (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

### ANALYSIS

### I. Personal Jurisdiction

"The requirement that the court have personal jurisdiction … springs not from Article III of the Constitution, but from the Due Process Clause." *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124, 131 (4th Cir. 2019) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). "Because the personal jurisdiction requirement 'recognizes and protects an individual liberty interest, … "the requirement may be waived by a defendant's 'express or implied

consent to the personal jurisdiction of the court.'" *Id.* (citing *Ins. Corp. of Ireland*, 456 U.S. at 703.)

"Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Fidrych*, 952 F.3d at 131 (quoting *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 228 (4th Cir. 2019)) (citations omitted).  The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of "specific" or "general" jurisdiction.  *Id.*

At issue in this case is whether the court may exercise specific personal jurisdiction over the Pelican Group Defendants and the University of Mary.  Plaintiff advances several theories upon which it contends this court may exercise jurisdiction.  First, Plaintiff asserts that this court may exercise specific jurisdiction over Mr. Ferguson pursuant to Maryland's long-arm statute.  (ECF No. 65, p.2.)  Second, Plaintiff argues that the forum selection clause contained within the Loan Agreement confers personal jurisdiction on this court over the Pelican Group and Mr. Ferguson.[6]  Finally, Plaintiff argues that this court may exercise jurisdiction over Mr. Whelan and the University of Mary pursuant to the jurisdictional conspiracy doctrine.  (ECF No. 65, p.4; ECF No. 66, p.1; ECF No. 30, p.7.)[7]

---

[6] The Pelican Group concedes it consented to the jurisdiction of this court through the forum selection clause of the Loan Agreement.  (ECF No. 61-1, p.2.)  Mr. Ferguson argues that he did not consent to this court's jurisdiction by way of the forum selection clause.  *Id.*

[7] Plaintiff filed the Complaint on December 9, 2020.  (ECF No. 16.)  University of Mary filed a Motion to Dismiss on December 29, 2020 (ECF No. 27.)  Plaintiff opposed the University's Motion.  (ECF No. 30.)  The University of Mary Replied.  (ECF No. 33.)  On August 4, 2021, this court issued an order denying the University of Mary's Motion without prejudice to its right to renew its motion.  (ECF No. 53.)  Pursuant to the order (ECF No. 53), the University of Mary filed its Renewed Motion to Dismiss on November 11, 2021.  (ECF No. 62.)  Plaintiff submitted its Opposition (ECF No. 66), and the University of Mary replied.  (ECF No. 71.)  Each of the renewed papers incorporates by reference the arguments made in the original papers.  Accordingly, the court will consider both the original papers and the renewed papers for the purpose of resolving the University of Mary Motion.

### A.  Specific Jurisdiction - Maryland Long Arm Statute and Due Process[8]

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).  In order for this court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment.  *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).  This court accepts Maryland courts' interpretation with regard to the state's long-arm statute as binding. *Mylan Labs.*, *Inc. v. Akzo, N.V.,* 2 F.3d 56, 61 (4th Cir. 1993).  It is well settled in Maryland that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution.  *Mohamed v. Michael*, 279 Md. 653  (1977).  Thus, this court's statutory and constitutional inquiry is merged for purposes of establishing personal jurisdiction. *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996).

Maryland's Long-Arm Statute provides:

> (**a**) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
> (**b**) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>> (**1**) Transacts any business or performs any character of work or service in the State;
>> (**2**) Contracts to supply goods, food, services, or manufactured products in the State;

---

[8] Plaintiff does not assert that the court may exercise general jurisdiction over any of the Pelican Group Defendants or the University of Mary.  Both the Pelican Group Defendants and the University of Mary assert that this court may not exercise general personal jurisdiction.  The court notes that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Further, "a corporation may be fairly regarded as at home in the form where it is incorporated and the forum where it has its principal place of business."  *Fidrych v. Marriott Int'l, Inc.,* 952 F.3d 124 (4th Cir. 2019). Accordingly, absent more, this court will not exercise general jurisdiction over individuals who undisputedly are domiciled in Florida and Virginia, or a non-profit corporation who is at "home" in North Dakota.

(**3**) Causes tortious injury in the State by an act or omission in the State;

(**4**) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(**5**) Has an interest in, uses, or possesses real property in the State; or

(**6**) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

MD. CTS. & JUD. PROC. §§ 6-103(a) and (b).

A court's exercise of jurisdiction over a nonresident defendant satisfies the requirements of due process if a defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

The standard for determining the existence of personal jurisdiction over a nonresident defendant varies depending on whether the defendant's contacts with the forum state also provide the basis for the suit. If a defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction." In determining whether specific jurisdiction exists, this court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711-12 (4th Cir. 2002) (citations omitted).

1. ***Mr. Ferguson does not have sufficient contacts with the State of Maryland to satisfy Maryland's Long-Arm Statute or Due Process***

Plaintiff alleges that this court may exercise jurisdiction over Mr. Ferguson because (1) he was an officer and board member holding substantial financial interest in the Pelican Group and the Subsidiary Defendants; and (2) because he personally committed, inspired, directed, participated, or cooperated in the Pelican Group committing the fraud of which Plaintiff complains. (ECF No. 16, ¶19.) The Pelican Defendants assert that this court lacks personal jurisdiction over Mr. Ferguson because Plaintiff fails to allege that Mr. Ferguson had any contacts with Maryland or owned any property in Maryland. (ECF No. 61-1, p.6.)

Maryland's long-arm statute requires a plaintiff to identify the section of the long-arm statute on which he relies. MD. CODE ANN., CTS. & JUD. PROC. § 6-103(a); *Ottenheimer Publishers, Inc. v. Playmore, Inc*., 158 F. Supp. 2d 649, 652 (D. Md. 2001) ("[i]t is nonetheless necessary first to identify a specific Maryland statutory provision authorizing jurisdiction …").  This requirement can be met through a complaint or in opposition to a 12(b)(2) motion. *Hausfeld v. Love Funding Corp*., 16 F. Supp. 3d 591, 597 (D. Md. 2014).  Plaintiff counters the Pelican Group Motion (and alleges in the Complaint) that Sections 6-103(b)(1) and (b)(3) of the Maryland Long-Arm Statute are satisfied because of the nature and volume of Mr. Ferguson's transmitted communications directed to Plaintiff, a Maryland LLC located in the state. (ECF No. 65, p.2.)

According to Plaintiff, Section 6-103(b)(1) is satisfied because the causes of action in Counts One through Four arise out of the Pelican Group and Mr. Ferguson's transaction of business in Maryland.  (ECF No. 65, p.2.)  Plaintiff further argues that Section 103(b)(3) is satisfied because Counts Three and Four arise from Mr. Ferguson and the Pelican Group, together, causing a tort in Maryland through an act or omission in the State.  In support, Plaintiff alleges that Mr. Ferguson caused several letters to be sent to Plaintiff regarding the Loan Agreement.  *Id.*;(ECF

No. 65, p.2.)  Plaintiff also alleges that Mr. Ferguson executed and sent three contracts to Maryland: the Loan Agreement, the June 17, 2016, Promissory Note, and the January 2016 Promissory Note.  *Id.*  Based on these allegations, Plaintiff argues that "Mr. Ferguson's acts were directed toward[] the Maryland Plaintiff causing injury in the state of Maryland."  (ECF No. 65, p.3.)

Transacting business in the state under subsection (b)(1) of the Long Arm Statute requires "purposeful activity in the state," but the defendant need not be physically present in Maryland. *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 599 (D. Md. 2014).  Sections 6-103(b)(1) and (b)(3) of Maryland's long-arm statute do, however, require "performance of acts within the state."  *Layton v. AAMCO Transmissions, Inc.*, 717 F. Supp. 368, 370 (D. Md. 1989).

Here, Mr. Ferguson's contacts are insufficient to satisfy the Maryland long-arm statute or Due Process.  Mr. Ferguson's alleged contacts with the state amount to relatively sparce correspondence to a Maryland entity, Plaintiff, who is located in Maryland.  Sending correspondence in the form of letters and executed contracts to be delivered in the forum state does not qualify as transacting business or causing tort in the forum state.  *See Layton,* 717 F. Supp. 368 (declining to exercise personal jurisdiction where defendant's only contacts with the forum state were letters sent to the forum state.)  Further, section 6-103(b)(3) requires that both the injury and the act or omission occur in Maryland. *Craig v. Gen. Fin. Corp. of Ill.*, 504 F. Supp. 1033, 1036-37 (D. Md. 1980).  The Complaint does not allege that Mr. Ferguson's actions of sending the letters and correspondence to Maryland occurred within Maryland – which is a requirement under *Craig v. Gen. Fin. Corp.*  In fact, Plaintiff does not allege any acts or omissions occurring in Maryland which would serve as a basis for this court to exercise personal jurisdiction under Section 6-103(b)(3).  *See Aphena Pharma Solutions-Maryland, LLC v. Biozone Labs., Inc.,* 912 F. Supp. 2d

309, 317 (D. Md. 2012) *(*holding that *"*[a]lthough the results of [defendant's] alleged misrepresentations were felt in Maryland, [plaintiff] has not alleged, nor do the affidavits indicate, that [defendant] acted in Maryland. The only communications in the record that could give rise to such misrepresentations were phone calls or emails—the types of communications that *Zinz* held were not acts in Maryland.); *see also Zinz v. Evans and Mitchell Industries,* 22 Md. App. 126, 132 (1974) (declining to exercise personal jurisdiction where the alleged act was sending letters to Maryland).

To the extent Plaintiff relies on Mr. Ferguson's status as an officer and board member as a basis for this court to exercise jurisdiction over him, Plaintiff's reliance is misplaced. "Jurisdiction over individual officers or employees of a corporation may not be predicated upon jurisdiction over the corporation, absent activities by the individuals sufficient to subject them to a long arm statute." *Quinn v. Bowmar Pub. Co.,* 445 F. Supp. 780, 785 (D. Md. 1978) (citing *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969)). Mr. Ferguson's correspondence to Plaintiff was on behalf of Pelican Group and in accordance with his duties as an officer of same. Plaintiff's allegations regarding Mr. Ferguson's status as an officer, even if coupled with Plaintiff's allegations that Mr. Ferguson caused correspondence and executed contracts to be sent to the forum, are insufficient as a basis for personal jurisdiction.

Finally, Plaintiff asserts that the Fourth Circuit has held that there is "nothing unreasonable about subjecting [a defendant] to jurisdiction [when it]…had submitted false information…, intending for [forum-state] businesses to rely upon this information." (ECF No. 65, p.3) (quoting *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.,* 795 F. Supp. 2d 365, 371 (D. Md. 2011)) (citations omitted). While the Complaint does allege a cause of action for fraud, the court finds, as discussed in Section II D., *infra*, that the fraud count (Count Three) sounds in breach of contract.

Accordingly, the purported fraud cannot serve as a basis for this court's exercise of personal jurisdiction over Mr. Ferguson.  *See* cases cited, *infra,* in Section II D.

### 2. *Mr. Whelan*

The Pelican Group Defendants assert that Mr. Whelan is a citizen of Florida with no contacts with, or property in, the State of Maryland.  (ECF No. 61-1, p.6.)  Plaintiff alleges that this court may exercise personal jurisdiction over Mr. Whelan because he is an officer and holds substantial financial interest in the Pelican Group and the Subsidiary Defendants.  (ECF No. 16, ¶¶13, 19.)  The Complaint further alleges that Mr. Whelan was involved in Pelican Group's alleged fraud against Plaintiff.  *Id.*  In contrast, the Pelican Group Defendants urge that Mr. Whelan never participated in any of the negotiations relating to the Note Transactions.[9]  (ECF No. 61-1, p.6.)

It is well settled in the Fourth Circuit that in order for this court to exercise personal jurisdiction over a non-resident defendant, two conditions must be satisfied.  "First the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with the Fourteenth Amendment due process requirements."  *Christian Sci. Bd. of Dirs. Of the First Church of Christ, Scientist v. Nolan*,  259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs. Inc.,* 84 F.3d 132, 134 (4th Cir. 1994)).  "The Maryland long-arm statute… limits specific jurisdiction to cases where the cause of action arises from any act enumerated in the statute itself.   Thus, a plaintiff must identify a specific Maryland statutory provision authorizing jurisdiction."  MD. CODE ANN., CTS. & JUD. PROC. §§ 6-103(b)(1); *Johns Hopkins Health Sys. Corp. v. Al Reem Gen. Trading & Co.'s Rep. Est.,* 374 F. Supp. 2d. 465, 472 (D. Md. 2005) (quoting *Ottenheimer Publishers, Inc. v. Playmore, Inc.,* 158

---

[9] *See* page 30, n.14.

F.Supp.2d 649, 652 (D. Md. 2001)) (internal citations and quotation marks omitted).  Here, Plaintiff has failed to satisfy the first condition.

Plaintiff has not identified any specific statutory provision authorizing personal jurisdiction over Mr. Whelan. Indeed, Plaintiff correctly noted that it could have identified the statute authorizing jurisdiction in the Complaint or, alternatively in response to a motion to dismiss. *Martynuska v. Nat'l Payment Relief, LLC,* Civil Action no. RDB-14-0265, 2014 U.S. Dist. LEXIS 116953, at \*14 (D. Md. Aug. 22, 2014) *citing Johansson Corp., v. Bowness Constr. Co.,* 304 F. Supp. 2d. 701, 704 n.1 (D. Md. 2004)).  Plaintiff, in its opposition, only identified specific statutory provisions on which it relies with respect to Mr. Ferguson.  With respect to Mr. Whelan, however, Plaintiff relies solely on the jurisdictional conspiracy doctrine, *discussed infra*, as the basis for the court to exercise personal jurisdiction. This court declines to act on behalf of Plaintiff to opine whether any statutory provision would allow it to exercise jurisdiction over Mr. Whelan.  *See United States v. Sineneng-Smith,* 140 S. Ct. 1575, 1579 (2020) (holding that "[i]n our adversarial system of adjudication, we follow the principle of party presentation."); *see also Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (holding that "in…civil…cases, in the first instance and on appeal…, we rely on the parties to frame the issue for decision and assign the court the role of a neutral arbiter of matter the parties present.")  That notwithstanding, for the sake of completeness, the court analyzes application of the jurisdictional conspiracy doctrine as applied to Mr. Whelan. *See infra,* Section I B 1.

### 3.  *University of Mary*

The University of Mary argues that Plaintiff failed to allege or argue that the University of Mary has sufficient minimum contacts with the State of Maryland to subject it to the personal jurisdiction of this court.  (ECF No. 71, p.2.)  Therefore, University of Mary argues, the court

should regard the point as conceded by Plaintiff.  *Id.*  Plaintiff's arguments that this court can exercise personal jurisdiction over the University of Mary are based on the jurisdictional conspiracy doctrine, *discussed infra*.  Plaintiff does not address or offer any evidence of the University of Mary's contacts, or lack thereof, with the State of Maryland.

Similar to Mr. Whelan, Plaintiff has failed to identify any statutory provision authorizing this court to exercise personal jurisdiction over the University of Mary.  *Ottenheimer Publishers, Inc.,* 158 F.Supp. 2d at 652.  Accordingly, this court declines to exercise jurisdiction over the University of Mary pursuant to the Maryland long-arm statute for the reasons articulated in Section I A 2.  Plaintiff's silence on the applicability of the Maryland long-arm statute as it relates the University of Mary is taken as a concession that the court may not exercise jurisdiction over the University of Mary under the long-arm statute.  *See Stenlund v. Marriott Int'l, Inc*., 172 F. Supp. 3d 874, 887 (D. Md. 2016) (instructing that "[i]n failing to respond to this argument, Plaintiff concedes the point.")  In any event, as with Mr. Whelan, the court analyzes application of the jurisdictional conspiracy doctrine as it relates to the University of Mary. *Infra* at Section I B 2.

## B.  Specific Jurisdiction – Jurisdictional Conspiracy Doctrine

As a foundational matter, "[a] civil conspiracy is a combination of two or more persons by an *agreement or understanding* to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff."  *Capital Source Fin., LLC v. Delco Oil, Inc.,* 625 F. Supp. 2d 304, 314 (D. Md. 2007) (quoting *Green v. Wash. Suburban Sanitary Comm'n*, 259 Md. 206, 221 (1970)) (emphasis added in original) (citations omitted). "Simply stated, the conspiracy theory of personal jurisdiction allows a court to exercise jurisdiction over an out-of-

state defendant whose co-conspirators have committed jurisdictionally sufficient acts within the forum state." *Capital Source Fin.,* 625 F. Supp. 2d at 315 (citations omitted).

The conspiracy theory of personal jurisdiction is "based on two principles: (1) that the acts of one co-conspirator are attributable to all co-conspirators,; and (2) that the constitutional requirement of minimum contacts between non-resident defendants and the forum can be met if there is a substantial connection between the forum and a conspiracy entered into by such defendants." *Cawley v. Boch,* 544 F. Supp. 133, 134 (D. Md. 1982) (citing *McLaughlin v. Copeland*, 435 F. Supp. 513, 530 (D. Md. 1977); *Vermont Castings, Inc. v. Evans Products Co.*, 510 F. Supp. 940, 944 (D. Vt. 1981)).  Under the doctrine, a court may extend personal jurisdiction to a co-conspirator when:

(1) two or more individuals conspire to do something;

(2) that they could reasonably expect to lead to consequences in a particular forum;

(3) if one co-conspirator commits overt acts in furtherance of the conspiracy; and

(4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state.

*Cawley*, 544 F. Supp. at 135.

### 1. Mr. Whelan

Plaintiff asserts that Mr. Whelan aided and abetted in the alleged fraud (Count Three). Plaintiff argues that, although Mr. Whelan is not alleged to be part of a conspiracy, this court can exercise jurisdiction over Mr. Whelan by way of the jurisdictional conspiracy doctrine.  (ECF No. 65, p.4.)

Plaintiff has not satisfied the first prong of the jurisdictional conspiracy doctrine. Specifically, Plaintiff concedes that it has not alleged Mr. Whelan engaged in a conspiracy, but argues without supportive authority that the jurisdictional conspiracy doctrine is applicable "by

analogy." (ECF No. 65, p.4.)  Because conspiracy and aiding and abetting are distinctive causes

of action – only one of which is covered under the jurisdictional conspiracy doctrine – the court

declines to exercise personal jurisdiction over Mr. Whelan on this basis.  *See Scholssberg v. Abell*

*(In re Abell),* 549 B.R. 631, n.18 (Bankr. D. Md. 2016) (quoting *Halberstam v. Welch*, 705 F.2d

472, 478 (D.D.C 1983) (holding that "the prime distinction between civil conspiracies and aiding-

abetting is that a conspiracy involves an agreement to participate in a wrongful activity. Aiding-

abetting focuses on whether a defendant knowingly gave substantial assistance to someone who

performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct.")

### *2. University of Mary*

Plaintiff argues that this court may exercise personal jurisdiction over the University of

Mary pursuant to the jurisdictional conspiracy doctrine because it has alleged that "[t]he University

of Mary aided and abetted in the fraud and or entered into a [c]onspiracy with the Pelican Group

to commit the fraud." (ECF No. 16, ¶176; ECF No. 30, p.7.)  In response, University of Mary

argues that this court lacks personal jurisdiction pursuant to the jurisdictional conspiracy doctrine

because Plaintiff has only offered a "mere recitation of allegations" without any "supporting facts

demonstrating 'an agreement or understanding' between [defendants]" which is not "enough to

support [the] [c]ourt's exercise of personal jurisdiction over Defendants…." (ECF No. 33, p.7.)

The Maryland Court of Appeals in *Mackey v. Compass Mktg.,* held:

> The central due process issue raised by the conspiracy theory is
> whether the relationship between co-conspirators specified by the
> conspiracy theory is sufficient to justify the attribution contemplated
> by the theory.  The legal relationship of one party to another may
> affect the jurisdictional balance; under the attribution method, the
> legal relationship between two or more persons may be such that it
> is reasonable to *attribute* the jurisdictional contacts of one party to
> the other.  The effect of attribution is that the contacts that permit
> jurisdiction over the first party may be used against the second,
> thereby establishing jurisdiction over that party also.  Applied to the

> conspiracy theory of jurisdiction, the acts of a co-conspirator in furtherance of the conspiracy may be attributed to other co-conspirators if the requirements of the conspiracy theory are met. The attribution principle enables a court to exercise jurisdiction over nonresidents involved in a conspiracy when a co-conspirator performs jurisdictionally sufficient acts in furtherance of the conspiracy.

391 Md. 117, 130-31 (2006).

The *Mackey* Court further held:

> [U]nder the conspiracy theory, acts of one co-conspirator done in the course of the conspiracy that subject that co-conspirator to personal jurisdiction in a particular forum are attributed to another co-conspirator only if the other co-conspirator reasonably expects *at the time the other conspirator agreed to participate in the conspiracy* that such acts will be done and that such acts will subject the co-conspirator who performs them to the personal jurisdiction of the forum state.  This requirement, that the reasonable expectation be present at the time the co-conspirator agrees to the conspiracy, satisfies the *World-Wide Volkswagen* [*Corp. v. Woodson,* 444 U.S. 286 (1980)] requirement that personal jurisdiction is proper over a person in a particular forum.  If a person contemplating entering into a conspiracy wishes to avoid being subject to the personal jurisdiction of a particular forum based on the forum-related actions of another co-conspirator, that person can simply refrain from entering into the conspiracy or can agree to enter into the conspiracy only if it is modified so that it does not contemplate actions directed at the forum the person wishes to avoid.

*Id.* at 135 (emphasis added in original).

Here, Plaintiff has not alleged facts sufficient to comport with the requirements of the jurisdictional conspiracy doctrine. As an initial matter, Plaintiff has not alleged sufficient facts to support a cause of action for fraud, *discussed infra* at Section II C.  Because Plaintiff fails to state a claim for fraud against the Pelican Group and Mr. Ferguson, the conspiracy to commit fraud also fails.  As set forth in *Mackey*, in order for the jurisdictional conspiracy doctrine to apply, there must be a conspiracy.  391 Md. at 135.  Additionally, there must be at least some contact with the forum state by Mr. Ferguson and the Pelican Group attributable to the University of Mary.

According to Plaintiff, those "contacts" are the alleged fraud. Because the court concludes, however, that Count Three fails to state a claim for fraud, there are no contacts "attributable" to the University of Mary under the jurisdictional conspiracy doctrine. *See infra*, at Section II C

Despite this court's finding that Plaintiff has not adequately pled a cause of action for fraud, and thereby fails to plead a cause of action for conspiracy to engage in fraud, for the sake of completeness, the court will address the University of Mary's argument that it did not have a reasonable expectation of being subject to Maryland jurisdiction. The University of Mary argues that Plaintiff fails to allege with clarity when the alleged conspiracy took place, which stifles the court's ability to determine the University of Mary's reasonable expectations at the time when the alleged conspiracy was formed. (ECF No. 71, p.9.)

Plaintiff alleges that "[a]s of June 3, 2016, the University of Mary had only reached 40% of its 112-million-dollar pledge goal." (ECF No. 16, ¶80.) Plaintiff further alleges that the Pelican Group, Messrs. Ferguson, Whelan, and O'Meara were having financial problems with the property development project they had undertaken. *Id.* ¶¶81-84.

Plaintiff alleges:

> Mr. O'Meara, in his capacity as an officer of University of Mary and as a financial shareholder and de-facto officer in the Pelican Group and the Alter Ego Defendants, along with Mr. Ferguson and Mr. Whelan, devised a plan to defraud private lenders in order to keep the Pelican Entities alive until they could cash in on the Five Farms Property and complete the University of Mary Campaign.

*Id.* ¶85. The Complaint alleges that the University of Mary may have had some financial concerns, or been in a financially unfavorable position, but Plaintiff does not allege that the University of Mary agreed to, or helped, devise any plan to defraud private lenders like Plaintiff. (ECF No. 16, ¶¶79-81, 88-89.) Instead, Plaintiff alleges that the University of Mary aided and abetted in the

fraud or entered into a conspiracy with the Pelican Group to commit the complained-of fraud. *Id.* ¶ 176. In support, Plaintiff alleges that Mr. Ferguson sent Plaintiff a Letter Agreement dated December 29, 2015, showing that the Pelican Group was still receiving monthly payments from the University of Mary. *Id.* ¶¶107-108. According to Plaintiff, this statement was false when made. *Id.* ¶109. Plaintiff claims that the December 2015 Letter Agreement between the Pelican Group and the University of Mary is the overt act in furtherance of the conspiracy. *Id.* ¶ 182.

The allegations in the Complaint fail to persuade the court that the University of Mary had any reasonable expectation of being subject to personal jurisdiction in Maryland at the time the alleged conspiracy was devised. Interestingly, Plaintiff alleges the Pelican Group, the Alter Ego Defendants, Mr. Ferguson and Mr. Whelan devised the plan to defraud creditors. Plaintiff does not allege that the University of Mary "conspired to do something" with another actor. It merely alleges that the vice president for the University of Mary signed the December 2015 Letter Agreement modifying a contract between the University of Mary and the Pelican Group. In order for this court to determine whether the University of Mary had a "reasonable expectation" "*at the time the other [alleged] conspirator[s] agreed to participate in the conspiracy*" it is imperative that the court be able to ascertain *when* the University of Mary agreed to participate in the alleged conspiracy. As the Complaint is pled, Plaintiff has not alleged when the University of Mary entered into any alleged conspiracy or that it entered into any conspiracy at all. Accordingly, this court may not exercise personal jurisdiction over the University of Mary based on the jurisdictional conspiracy doctrine.

C.  **The Forum Selection Clause**

Plaintiff, the Pelican Group, and Mr. Ferguson all signed the Loan Agreement.  Article X,

Section 14 of the Loan Agreement sets forth a forum selection clause, which provides in relevant

part:

> Any dispute or controversy arising out of, under, or in connection
> with, or in relation to, this Loan Agreement and/or any amendments
> thereto, breach thereof, which is not resolved informally by prior
> mutual agreement of the Parties hereto, shall be resolved by the
> Circuit Court of the City of Baltimore, Maryland, or, if the amount
> in controversy allows, by the United States District Court for the
> District of Maryland, under the fastest tracking afforded by either
> such court.  Each Party to this Agreement waives all objections to
> personal jurisdiction in either such court.

(ECF No. 16-1, p.15.)

 "Challenges to personal jurisdiction may be waived by either express or implied consent."

*Heller Financial Inc. v. Midwhey Powder Co,* 883 F.2d 1286, 1290 (7th Cir. 1989) (citing *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).  A valid forum selection clause is

sufficient to confer personal jurisdiction on a non-resident defendant.  *Burger King,* 471 U.S. at

472 n.14; *see also Dominium Austin Partners, LLC v. Emerson,* 248 F.3d 720, 726 (8th Cir. 2001)

(holding that "[d]ue process is satisfied when a defendant consents to personal jurisdiction by

entering into a contract that contains a valid forum selection clause"); *CoStar Realty Info., Inc. v.*

*Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009) (holding that defendants consented to the

jurisdiction of the court where the plaintiff's website's Terms of Use provision included a valid

forum selection clause.)

"Only a mandatory forum selection clause will be enforced; a permissive one will not

require dismissal."  *Koch v. Am. Online, Inc.,* 139 F. Supp. 2d 690, 693 (D. Md. 2000) (citing

*Eisaman v. Cinema Grill System, Inc.,* 87 F. Supp. 2d 446, 449 (D. Md. 1999)).  A mandatory

provision is one containing "clear language showing that jurisdiction is appropriate only in the

designated forum." *Davis Media Grp., Inc. v. Best Western Int'l, Inc.,* 302 F. Supp. 2d 464, 467 (D. Md. 2004). Conversely, a permissive forum selection clause "permits jurisdiction in the selected forum without precluding it elsewhere." *Id.*

The forum selection clause in the Loan Agreement is therefore mandatory. The forum selection clause provides that disputes "…shall be resolved by the Circuit Court of the City of Baltimore, Maryland, or… by the United States District Court for the District of Maryland." (ECF No. 16-1, p.15). *FindWhere Holdings, Inc. v. Systems Environmental Optimizations, LLC,* 626 F.3d 752 (4th Cir. 2010) (concluding that the phrase "any dispute or legal action…shall lie exclusively in" rendered the forum selection clause mandatory); *Manatee County, Florida v. Train,* 583 F.2d 179, 182 (5th Cir. 1978) (noting that "use of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made").

The forum selection clause further provides "…[e]ach party to this Agreement waives all objections to personal jurisdiction in either such court." (ECF No. 16-1, p.15). The language of the forum selection clause unequivocally establishes that the parties to the Loan Agreement intended for any suit arising out of, or related to, the Loan Agreement be brought in the state or federal courts of Maryland. The use of the word "shall," coupled with the parties' waiver of objections to personal jurisdiction in the designated courts establishes that the forum selection clause is mandatory. *Sterling Forest Associates, Ltd. v. Barnett-Range Corporation,* 840 F.2d 249, 251-52 (4th Cir. 1988) (holding a forum selection clause containing the phrase "shall be" is mandatory).

Given this court's determination that the clause is mandatory, "the court must decide whether enforcement would be unreasonable…." *CoStar Realty Info., Inc. v. Meissnew,* 604 F. Supp. 2d 757, 772 (D. Md. 2009) (quoting *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-

19 (1972)) (internal quotation marks omitted).  A forum selection clause may be unreasonable if "(1) agreement to the forum-selection clause was induced by fraud or overreaching, (2) enforcement would contravene a strong public policy of the forum in which suit is brought, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of his day in court." *Id.* (internal quotation marks omitted).

In this case, the Pelican Group Defendants and the University of Mary have not demonstrated that the forum selection clause is unreasonable. Neither the Pelican Group Defendants nor the University of Mary presents facts that suggest or demonstrate fraud or overreaching in the formation of the forum selection clause.  The Pelican Group Defendants and the University of Mary have also failed to show that trial in the state of Maryland will present grave difficulty or inconvenience.  Finally, enforcement of the forum selection clause would not contravene strong public policy.[10]

Finding that the forum selection clause contained in the Loan Agreement is valid, the Court will now address whether the forum selection clause confers the personal jurisdiction of this court over the Pelican Group, Mr. Ferguson, Mr. Whelan, and the University of Mary.

### 1.   *The Forum Selection Clause is Binding Upon Pelican Group*

As discussed, *supra,* the Pelican Group concedes that the forum selection clause contained within the Loan Agreement is valid as it relates to it.  *(*ECF No. 61-1, p.2.)  The forum selection clause provides: "Any dispute or controversy arising out of, under, or in connection with, or in

---

[10] The court notes that Defendants Mr. Whelan and the University of Mary do not address the reasonableness or applicability of the forum selection clause as it relates to the court's authority to exercise personal jurisdiction over them. Mr. Ferguson addresses the forum selection clause, but limits his argument to one of contract construction, *discussed infra*, at Section I C 2. Mr. Ferguson does not address the validity or reasonableness of the forum selection clause in his contractual construction arguments.

relation to, this Loan Agreement…" is subject to the forum selection clause.  (ECF No. 16-1, p.15.)  Accordingly, this court will exercise personal jurisdiction over the Pelican Group because it waived any objection to personal jurisdiction in this court, and the allegations in the Complaint arise out of or relate to the Loan Agreement.

## 2. *The Forum Selection Clause Contained in the Agreement is Binding Upon Mr. Frank Ferguson*

The Loan Agreement contains limiting language under Mr. Ferguson's signature block which states: "(with respect to Article V only)."  The Pelican Group Defendants assert that this limiting language establishes that Mr. Ferguson did not consent to the forum selection clause in Article X.  *(*ECF No. 61-1, p.2.)  This court rejects the Pelican Group Defendants' arguments.

It is "a long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'"  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer,* 380 U.S. 460, 465 (1965)).  Therefore, the interpretation of a contract is a matter of state law.  *James v. Circuit City Stores, Inc.,* 370 F.3d 417, 421-22 (4th Cir. 2004).  In interpreting a contract, Maryland courts apply the law of the state in which the contract was formed unless the parties agree to be bound by the law of another state.  *Cunningham v. Feinberg,* 441 Md. 310, 326 (2015).  In the present case, the parties agreed that the Loan Agreement "shall be interpreted and construed in accordance with the local, internal laws, of the State of Maryland, without regard to otherwise applicable conflicts of laws principles." (ECF No. 16-1, p.16.)  Accordingly, this court applies Maryland law in resolving whether Mr. Ferguson consented to personal jurisdiction in Maryland by signing the Loan Agreement.[11]

---

[11] The court notes that the fact that Mr. Ferguson lives in the Commonwealth of Virginia is not in dispute.  Further, Mr. Ferguson argues that the only section in the Loan Agreement applicable to him is Article V.  It logically follows that Mr. Ferguson would disagree that the choice of law provision contained in Article X, Section 14.(c), applies to

The Pelican Group Defendants' argument that the Loan Agreement outside of Article V is unenforceable against Mr. Ferguson does not find support in Maryland law.  "Maryland follows the objective law of contract interpretation, which 'giv[es] effect to the clear terms of agreements, regardless of the intent of the parties at the time of contract formation.'"  *Impac Mortg. Holdings, Inc. v. Timm,* 245 Md. App. 84, 109 (2020) (quoting *Precision Small Engines, Inc. v. College Park,* 457 Md. 573, 585 (2018)) (citations omitted).  "[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."  *Spacesaver Sys., Inc. v. Adam*, 440 Md. 1, 8 (2014) (*quoting General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985)).  "[T]he contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."  *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 52 (2013) (*quoting Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167 (1964)).

Objective interpretation of the Loan Agreement makes clear that Mr. Ferguson is bound by Article X, Section 14. <u>Laws; Forum</u>.  While Mr. Ferguson's signature block does state "(with respect to Article V only)," the only reasonable interpretation of that phrase is that the parties to the Loan Agreement intended to limit Mr. Ferguson's liability for breaches of the Representations and Warranties of Article V to the Loan Agreement.  (ECF No. 16-1, p.17.)  Further support of this interpretation is found in Article V, Representations and Warranties of Frank Ferguson: "it

---

him.  Notwithstanding, Mr. Ferguson's position, the court finds that the analysis for determining whether the forum selection clause, and therefore, the choice of law provision is applicable to Mr. Ferguson is the same under Maryland law or Virginia law.  *See Schuiling v. Harris*, 286 Va. 187, 193 (2013) (holding "[w]e construe the contract as a whole, giving terms their ordinary meaning unless some other meaning is apparent from the context. The various provisions are harmonized, giving effect to each when reasonably possible, and are construed considering the circumstances under which they were executed and the condition of the parties. A contract is either entire, meaning all its provisions are integral to the agreement of the parties, or severable." (internal citations omitted)).

being understood that any liability of Mr. Ferguson for breaches of any provisions of this Section shall terminate upon the repayment in full of Loan by the Borrower." *Id.* at p.10. Neither the limiting language of the signature block nor Article V shields Mr. Ferguson from the terms of the balance of the Loan Agreement. Adoption of the Pelican Group Defendants' interpretation would effectively and necessarily require the court to fail to give "effect… to each clause" such that the court would "cast[] out or disregard[] a meaningful part of the language" of the Loan Agreement. *Dumbarton,* 434 Md. at 52 (quoting *Sagner,* 234 Md. at 167).

A close reading of the Loan Agreement reveals that certain provisions apply to certain parties to the Agreement, while other provisions apply to all the parties or the entire agreement. This informs the court's analysis. Article X, Section 14. Laws; Forum states in relevant part:

"(a) Jurisdiction. Any dispute or controversy arising out of, under, or in connection with, or in relation to, this *Loan Agreement*…" (ECF No. 16-1, p.15) (emphasis added).

"(c) Governing Law. This *Agreement* shall be interpreted and construed in accordance with the local, internal laws, of the State of Maryland…" *Id.* at p.16 (emphasis added).

Article X, Section 19. Mutual Agreement, Approval, And Consent states in relevant part: "the *parties* hereto have read the foregoing *Agreement*, and have consulted with their legal counsel…and do cause this *Agreement* to be executed by their duly authorized and empowered officers and representatives…" *Id.* at p.17 (emphasis added). The language in Section 19 is applicable to all the parties as well as the Loan Agreement. It is apparent from the language of Article X, Section 14, that those provisions apply to the entire Agreement, to which Mr. Ferguson is a party.

Conversely, Article X, Section 11. Confidentiality states in relevant part: "[n]either *Lender* nor *Borrower* shall disclose or use the information provided to one another…. *Lender* and

24

***Borrower*** shall take all reasonable precautions to prevent such disclosure…. ***Lender*** and ***Borrower*** as the case may be, shall promptly notify the other party in writing." *Id.* at p.15 (emphasis added).  The terms "Borrower" and "Lender" are defined in the declarations section of the Loan Agreement.  "Lender" is defined as "Aqua Acceptance, LLC, a Delaware limited liability company," whereas "Borrower" is defined as "The Pelican group Consulting, Inc., a Delaware corporation f/k/a O'Meara, Ferguson, Whelan, and Conway, Inc."  *Id.* at p.1.  The language of Section 11 is limited to the Lender and Borrower and does not bind all parties to the Loan Agreement.

The language of Article IV, Representations and Warranties of the Company expressly binds only the Borrower, while Article V, Representations and Warranties of Frank Ferguson, expressly binds only Mr. Ferguson.[12]  *Id.* at pp.7-11.  Conclusion that Mr. Ferguson is not bound by those provisions of the Loan Agreement outside of Article V, including those that expressly refer to all "parties" to the Loan Agreement, would render the remainder of the Loan Agreement Contract inapplicable to Article V.  Not only is this inconsistent with Maryland law, it results in an absurd operation of the agreement. For example, Article V contains defined terms from the declaration, Article I and Article II, including "Lender," "Borrower," and "Loan."  *Id.* at pp.1-2.  Under the Pelican Group Defendants' theory, inclusion of Article I defined terms in Article V renders Article V effectively unenforceable or meaningless because according to the Pelican Group Defendants, Mr. Ferguson is not subject, or a party, to Article I but rather only to Article V.

In addition to rendering the Loan Agreement unintelligible, the Pelican Group Defendants' theory is squarely at odds with Maryland Contract Law:

---

[12] Interestingly, despite Mr. Ferguson's claim that only Article V of the Loan Agreement is applicable to him, Article V cross-references Article IV of the Loan Agreement. (ECF No. 16-1, p. 10.)

> "It is a fundamental rule of contract construction that the entire contract, and each and all of its parts and provisions, must be given meaning, and force and effect, if that can consistently and reasonably be done. An interpretation which gives reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable. So far as reasonably possible, effect will be given to all the language and to every word, expression, phrase, and clause of the agreement. No word or clause should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument. A construction will not be given to one part of a contract which will annul another part, unless such a result is fairly inescapable. Comparatively unimportant parts or provisions which may be severed from the agreement without impairing its effect or changing its character will be suppressed or subordinated if in that way, and only in that way, the agreement can be sustained and enforced."

*Orkin v.* Jacobson, 274 Md. 124, 130 (1975); 17 Am. Jur. 2d *Contracts* §259 (1964).

In construing the entire Loan Agreement, giving effect "to all language and every word, expression, phrase, and clause" contained therein, this court finds that the forum selection clause contained in the Loan Agreement applies to Mr. Ferguson. *Id.* Accordingly, this court may exercise personal jurisdiction over Mr. Ferguson for purposes of this suit.

### 3. *The Forum Selection Clause is Binding Upon Mr. John Whelan and the University of Mary*

The Pelican Group Defendants argue that Mr. Whelan should be dismissed from the case because this court cannot exercise personal jurisdiction over him through the Loan Agreement or any other operative documents. (ECF No. 61-1, p.17.) They also argue Mr. Whelan is domiciled in Florida and does not have sufficient minimum contacts with Maryland, such that neither general nor specific personal jurisdiction is available by operation of the long arm statute. *Id.* The University of Mary argues that the facts alleged by Plaintiff, even if taken as true, do not establish that this court can exercise general or specific personal jurisdiction over it. *(ECF No. 62-1, p.3.)*

Plaintiff alleges "[t]he basis for jurisdiction arises out of a Loan and Security Agreement dated January 2016…" (ECF No. 16, ¶16.) It further alleges "[j]urisdiction against…Whelan [is] proper because (1) each of these defendants are officers of and hold a substantial financial interest in the Pelican Group and Alter Ego Defendants; and (2) each of these defendants personally committed, inspired, directed, participated and/or cooperated in the Pelican Group committing the fraud against Plaintiff." *Id.* ¶19. With respect to the University of Mary, Plaintiff alleges "[j]urisdiction and [v]enue are proper against the University of Mary because the University of Mary was a co-conspirator and an aider and abettor with the Pelican Group in committing the fraud." *Id.* ¶ 20.

Given Plaintiff's allegation that jurisdiction arises under the Loan Agreement, the court considers whether the forum selection clause contained within confers personal jurisdiction over Mr. Whelan and the University of Mary even though they are not parties to the contract.

In determining whether a forum selection clause reaches individuals who are not parties to the contract, "such individuals are covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question." *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 633 (D. Md. 2006) (citing *Manetti-Farrow, Inc. v. Gucci Am. Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)) (holding forum-selection clause applies to non-party claims because "the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection applies to all defendants").

In *Olawole v. Actionet, Inc.*, the court applied a "three-step analysis to assess the enforceability and applicability of a forum selection clause as to the plaintiff," a non-party to that agreement. PX-116-3506, 2017 U.S. Dist. LEXIS 51683, 2017 WL 1230821 (D. Md. Apr. 3, 2017). As an initial matter, the court must determine whether the clause is mandatory. If so, it is

"presumptively enforceable." *Id.* at *4 (citation omitted). Second, the court must determine whether the specific claims fall within the scope of the clause. *Id.* "If they do fall within the clause's scope, the clause presumptively bars their adjudication outside of the designated forum." *Id.* Lastly, the court must determine "whether the party opposing enforcement has rebutted the presumption of enforceability by providing that enforcement would be unreasonable." *Id.* (citation omitted).

Here, the forum selection clause is mandatory. *See Analysis,* at Section. I D. Thus, the first prong is satisfied, and the forum selection clause is "presumptively enforceable." *Olawole,* 2017 U.S. Dist. LEXIS 51683, [WL] at *4.

Next, this court looks at whether the claims against Mr. Whelan and the University of Mary fall within the scope of the forum-selection clause. To determine the scope of the clause, the court looks to the language of the parties' contracts to determine which causes of action are governed by the forum-selection clauses.

While Mr. Whelan was not a party to the Loan Agreement, the claims asserted against him are so closely related to the claims against the signatories to the Loan Agreement that he is subject to the forum selection clause contained therein. The only remaining claim against Mr. Whelan is Count Three, Fraud, Civil Conspiracy – Aiding and Abetting. The Complaint alleges that Mr. Whelan aided and abetted in the alleged fraud. (ECF No. 16, ¶165). Plaintiff further alleges that Mr. Whelan "knew the terms of the Aqua Loan" and "provided substantial assistance or encouragement in the fraud by voting for and approving the Aqua Loan." *Id.* ¶¶ 166, 168. Plaintiff's claims against Mr. Whelan clearly arise "out of, under, or in connection with, or in relation to, this Loan Agreement…." (ECF No. 16-1, p.15.) The alleged fraud relates to the construction of the Loan Agreement, and the claims for aiding and abetting designate the alleged

fraud as the underlying tort.  Without the alleged fraud, Plaintiff would not have an underlying tort to base its aiding and abetting claim upon; accordingly the claim against Mr. Whelan is closely related to the claim for fraud against Mr. Ferguson and the Pelican group, as the former could not be alleged without the latter.  The claim asserted against Mr. Whelan is predicated on the claims asserted against the Pelican Group and Mr. Ferguson, making them "closely related" such that this court's exercise of personal jurisdiction is proper.  *Belfiore,* 452 F. Supp. 2d at 633; *see also Tech USA, Inc. v. Evans,* 592 F. Supp. 2d 852, 857 (D. Md. 2009) (reasoning that a corporation who was neither a party to nor a signatory to the agreement was "bound by the forum-selection clause of the agreement…" because the claims of the corporation were "closely related" to those of the signatory).

Similarly, this court can exercise specific personal jurisdiction over the University of Mary, because, like Mr. Whelan, the only remaining claims against the University of Mary under Count Three are conspiracy to commit and/or aiding and abetting in the alleged fraud.  Because both conspiracy and aiding and abetting require an underlying tort, the claims against the University of Mary are "closely related" to the claims against Mr. Ferguson and the Pelican Group.  As the court previously opined, both conspiracy and aiding abetting are predicate offenses, requiring an underlying tort, which – in this case – is the alleged fraud.  Not only are the claims closely related to those alleged against the signatories, the allegations against the University of Mary would not exist absent the alleged fraud.  Additionally, the claims against the University of Mary are within the scope of the forum selection clause because they relate to the formation and terms of the Loan Agreement.  It is, therefore, proper for this court to exercise specific personal jurisdiction over the University of Mary under the forum selection clause contained in the Loan Agreement.

Finally, this court is tasked with determining whether any party opposing enforcement of the forum selection clause has demonstrated enforcement would be unreasonable. Neither the Pelican Group Defendants nor the University of Mary raise any arguments as to the unreasonableness of enforcing the forum selection clause, and the court, after examining the papers submitted, does not find that enforcement would be unreasonable.

## II. Failure to State a Claim

The Pelican Group Defendants and the University of Mary argue that even if this court determines it can exercise personal jurisdiction, Plaintiff's Complaint must still be dismissed for failure to state a claim. (ECF No. 61-1; ECF No. 62-1.)

### A.  Count One – Money Judgement against Pelican Group[13]

The Pelican Group Defendants argue that Count One should be dismissed because "Plaintiff…fails to allege it sent the Pelican Group a written notice and provided the Pelican Group an opportunity to cure – a contractual prerequisite to Plaintiff declaring a payment 'default' under the Aqua Notes…."  (ECF No. 61-1, p.20).  In support of their position, the Pelican Group Defendants assert that because the Aqua Notes[14] provide for a 15-day notice of default and cure, and Plaintiff did not allege it provided the Pelican Group with written notice, Count One fails to state a claim.  *Id.*

Plaintiff argues that Count One alleges: "[d]espite demand, the Pelican Group refused to pay the amounts due on the notes," which amounts to an allegation that notice of default was sent to the Pelican Group in the form of a demand.  (ECF No. 65, p.5.)  Alternatively, Plaintiff asserts

---

[13] Based on the allegations set forth in Count One, this court construes Plaintiff's claim as one for breach of contract against the Pelican Group.  Additionally, Plaintiff notes "Plaintiff States a Claim for Count I and II For Breach of Contract."  (ECF No. 65, p.5.)

[14] The Aqua Notes refer to the two promissory notes between Plaintiff as the Lender and Pelican Group as the Borrower.  Together with the Loan Agreement they comprise the Note Transactions.  (ECF No. 61-1, p.5.)

notice, and cure, is not required to bring a breach of contract action for breach of Article V Representations and Warranties. *Id.* In fact, Section 8.01(2) does not require a demand when the event of default is a breach of the representation or warranty made. (*See* ECF No. 16-1, p.13).

To state an action for breach of contract, the plaintiff must allege: (1) the existence of a contractual obligation owed by the defendant to the plaintiff; and (2) a material breach of that obligation. *Cont'l Masonry Co. v. Verdel Constr. Co.,* 279 Md. 476 (1977). Plaintiff has alleged, and the Pelican Group does not dispute, the existence of a contract. (ECF No. 16, ¶¶142-46). Further, Plaintiff alleges a material breach in the form of non-payment as required by the Aqua Notes. *Id.* Lastly, Plaintiff alleges that it demanded the Pelican Group repay the amounts due under the Aqua Notes, which is sufficient to satisfy any notice requirement alleged by the Pelican Group Defendants. At this stage, Plaintiff has sufficiently pled a cause of action for breach of contract by the Pelican Group. Accordingly, the Pelican Group Motion for failure to state a claim will be denied as to Count One.

### B. Count Two – Breach of Contract against Frank Ferguson and the Pelican Group

Under Count Two, Plaintiff alleges breach of the Representations and Warranties of the Loan Agreement by the Pelican Group and Mr. Ferguson at Articles VI and V, respectively. (ECF No. 16, ¶¶147-55.) The Pelican Group Defendants argue that Plaintiff's allegations are speculative, conclusory, and implausible. In support, the Pelican Group Defendants raise several merit-based arguments and defenses not properly considered at the 12(b)(6) stage. (ECF No. 61-1, pp. 21-29.)

Plaintiff alleges the existence of a contract, the Loan Agreement, which the Pelican Group Defendants do not dispute. (*See generally* ECF No. 16.) Second, Plaintiff alleges material breaches by the Pelican Group and Mr. Ferguson, including allegations that the Representations

and Warranties were false when made, omitted material facts, and were materially misleading. Accordingly, the Pelican Group Motion will be denied as to Count Two.

### C.  Count Three – Fraud and Aiding and Abetting against the Pelican Group, Mr. Ferguson, Mr. Whelan, and University of Mary

The elements of fraud are: (1) a representation made by a party was false; (2) either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him; (3) the misrepresentation was made for the purpose of defrauding some other person; (4) the other person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that that person suffered damage directly resulting from the misrepresentation. *Suburban Properties Management, Inc. v. Johnson*, 236 Md. 455, 460 (1964) (citing *Appel v. Hupfield*, 198 Md. 374, (1951)) (citations omitted).

The elements of tortious aiding and abetting are: (1) independent tortious conduct by the direct perpetrator of the underlying tort; (2) substantial assistance, aid, or encouragement to the principal tortfeasor; and (3) actual knowledge of the aider and abettor of the wrongful conduct and his role in furthering such conduct. *Alleco, Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176 (1995).

Generally, a complaint will survive a Rule 12(b)(6) motion if it "state[s] a claim to relief that is plausible on its face," which is to say that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Fraud-based claims, however, must satisfy the heightened pleading standard of Rule 9. *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455-56 (4th Cir. 2013). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).

The Pelican Group Defendants argue that Plaintiff's fraud and aiding and abetting claims should be dismissed because: (1) they rely upon insufficiently pled allegations; (2) the fraud claims against the Pelican Group and Mr. Ferguson are nothing more than an attempt to recast a breach of contract claim as a tort claim; and (3) the aiding and abetting fraud claims against Mr. Whelan are insufficiently pled. (ECF No. 61-1, p.30.)

The University of Mary argues that Plaintiff has failed to allege a plausible claim for fraud against it because Plaintiff's claims are predicated on its reading of three letters which were exchanged between University of Mary and the Pelican Group modifying an existing contract between the two. (ECF No. 62-1, p.6.)

### D.  Count III Sounds in Contract Not Fraud

"Where a controversy concerns purely economic losses allegedly caused by statements made during the course of a contractual relationship between businessmen, contract law – not tort law – provides the rule of decision by which the case is to be governed." *Architectural Sys. v. Gilbane Bldg. Co.,* 779 F. Supp. 820, 822 (D. Md. 1991) (citing *Flow Industries, Inc. v. Fields Construction Co.,* 683 F.Supp. 527, 529 (D.Md. 1988)). "Mere negligent breach of contract is not enough to sustain an action sounding in tort." *Id.* "It is only when a breach of contract is also a violation of a duty imposed by law that the injured party has a choice of remedies." *Heckrotte v. Riddle,* 224 Md. 591, 595 (1961) (citing *Slacum v. Trust Co.,* 163 Md. 350 (1932)).

In *Heckrotte,* the Maryland Court of Appeals addressed whether home buyers could assert both a breach of contract claim and a negligence claim for the sale of property in violation of zoning laws. 224 Md. 591 (1961). In doing so, the Court of Appeals held, "absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Id.* at 598. Similarly, Plaintiff does not allege any duty or

33

obligation that does not arise out of the Loan Agreement; therefore, Plaintiff cannot maintain a separate tort action.

Here, Plaintiff's fraud allegations are clearly contractual in nature. The essence of Plaintiff's alleged injury is Defendants' alleged failure to satisfy contractual obligations, specifically the Representations and Warranties contained in Articles IV and V of the Loan Agreement. The alleged misrepresentations on which Plaintiff bases its fraud count arise solely from the Pelican Group and Mr. Ferguson's duties under the Loan Agreement. For example, Plaintiff alleges that the financial statements failed to identify certain debts, which amounts to an act of fraud by the Pelican Group and Mr. Ferguson. (ECF No. 16-1, ¶159). Plaintiff pleads a breach of contract claim as fraud. The Pelican Group and Mr. Ferguson already had a duty to disclose any known debts pursuant to Articles IV and V, and their failure to do so, if true, amounts to a breach, not fraud. Moreover, Plaintiff claims the University of Mary already had paid money to the Pelican Group, which further supports its claim for fraud. Once again, the payments referenced in Plaintiff's claim for fraud are governed by the Loan Agreement. (*See* ECF No. 16-1, p.4.) Accordingly, the duty regarding the payments is contractual in nature; therefore, failure to fulfill the obligations provided in Article II, Section 2.05, amounts to a breach and not fraud.

Because this court finds that Plaintiff has not pled a cause of action for fraud, it need not reach the issue of aiding and abetting or civil conspiracy. *See Alleco,* 340 Md. at 201 (stating that "civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable.") (citations omitted). Accordingly, Count III of the Complaint will be dismissed.

### E.  Alter Ego Defendants (Count Four)

The Pelican Group Defendants argue that Count Four warrants dismissal because Plaintiff's allegations of dominion and control are insufficient to justify imposing alter ego liability.  *See* (ECF No. 61-1, p. 41).  "The law of the state in which an entity is incorporated generally governs the question whether a court may pierce an entity's veil." *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018).  Because the Pelican Group is incorporated in Delaware, Delaware law governs.

The alter-ego doctrine governs whether a civil action may pierce the corporate veil. "To state a veil-piercing claim, the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 863 A.2d 492, 497 (Del. 2003).  "The degree of control required to pierce the veil is exclusive domination and control … to the point that [the Subsidiary Defendants] no longer ha[ve] legal or independent significance of [their] own." *Wallace ex Rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) (citations and internal quotation marks omitted).  "Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice."  *Id.* (citations and internal quotation marks omitted); *see also Outokumpu Engineering Enterprises, Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729 (Del. 1996) (noting that "the injustice must be beyond what is alleged in the breach of contract.")

Inquiry into whether an entity is an alter-ego of a defendant requires analysis of factors including "insolvency, undercapitalization, commingling of corporate and personal funds, the absence of corporate formalities, and whether the subsidiary is simply a façade for the owner." *Manichaean Capital, LLC v. Exela Technologies, Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021).

Delaware courts have made clear that "mere dominion and control" will not support liability. *Outokumpu Engineering Enterprises, Inc.*, 685 A.2d at 729.

Here, Plaintiff has not alleged sufficient facts that, if true, support the conclusion that the various entities in this case are alter-egos of the Pelican Group; nor would the facts as alleged warrant piercing the corporate veil. Plaintiff alleges in a conclusory fashion that the Pelican Group had "domination and control" over the Subsidiary Defendants on the basis that tax returns and financial statements "appear to combine all of the Alter Ego Defendants, assets, and debts as a single entity in the Pelican Group." *Id.* at ¶¶185-91. Plaintiff's Complaint is silent on undercapitalization, commingling of corporate and personal funds, and whether the various entities are simply a façade. *See Manchiaean Capital, LLC*, 251 A.3d at 716. The dominion and control Plaintiff alleges by Defendant Pelican Group, even if true, is insufficient to state a claim alleging alter ego status of the remaining Defendants named in Count IV. *See Outokumpu Engineering Enterprises, Inc.*, 685 A.2d at 729.

Moreover, this court's finding that Plaintiff has not sufficiently pled a cause of action for fraud militates in favor of dismissal of Count IV, as the Complaint lacks the essential tort component required to pierce the corporate veil. *See Wallace*, 752 A.2d at 1184 (Del. Ch. 1999). Accordingly, the court will dismiss Count IV.

## CONCLUSION

For the reasons set forth herein, The Pelican Group Motion (ECF No. 61) is **DENIED** with respect to Counts One and Two and **GRANTED** with respect to Counts Three through Six. The University of Mary Motion (ECF No. 62.) is **GRANTED**. This case shall proceed as to Plaintiff's two remaining claims for breach of contract (Counts One and Two.)

A separate order follows.

_____/s/_____

Julie R. Rubin
United States District Judge